# STATE OF ILLINOIS,

DELIVERED

| 10 405<br>|133 459|

## AT THE JUNE TERM 1849,

### AT OTTAWA.

---

BELA SHAW, impleaded, &c., appellant, *v.* EZEKIEL DEN-
NIS, appellee.

*Appeal from Winnebago.*

The Act of the Legislature, passed February 25, 1847, entitled "*An Act for the maintenance of the Rockford Bridge,*" is not unconstitutional.

The Legislature has the right to impose local taxes for specified purposes, and to determine what extent of territory shall be subjected to their payment.

Authority given by the Legislature to certain Commissioners to ascertain and determine the amount of a particular indebtedness, is not an exercise of judicial power by the Legislature.

Under the 25th section of the 89th chapter of the Revised Statutes, where a personal demand has been made for taxes by the Collector, it is discretionary with him whether he will make a distress before the expiration of ten days from the time of making the demand. In case a personal demand is not made, but the notice is left as is required by the 34th section, then the demand may be be considered as incomplete until the expiration of the ten days, within which, by the terms of the notice, the party has to pay the tax.

A warrant for the collection of taxes imposed by a Board of Commissioners appointed for the purpose, may be issued by a majority of the Board.

TRESPASS, in the Winnebago Circuit Court, brought by
the appellee against the appellant, Hiram R. Maynard, and

Ephraim Wyman, for taking and driving away certain cattle, the property of the appellee.

The declaration contained two counts, which were substantially alike, and in the common form. The defendants severed in their pleas, Maynard pleading separately, and the others joining in a like plea.

Maynard pleaded not guilty, and two special pleas of justification. His first special plea set forth, that on the 25th day of February, 1847, the Legislature passed an Act to authorize the levying of a special tax upon the owners of property in Rockford precinct for the purpose of maintaining a certain bridge, which had been previously erected across Rock River, at Rockford, and constituting the other defendants, Shaw and Wyman, together with two others, a corporate body by the name of "Bridge Commissioners," to carry out the provisions of the Act; that, on the 29th day of March, 1847, said Bridge Commissioners entered upon their duties, and on the 30th day of April, 1847, made out a list of the taxable persons of Rockford precinct, together with an assessment of the taxable property of each, at the rate of fifty cents on each one hundred dollars; that on the 29th day of November, 1847, said Bridge Commissioners delivered their warrant to the defendant, Maynard, who was then Sheriff and Collector of said county of Winnebago, authorizing him to collect eight dollars and forty two and a half cents from said plaintiff, Dennis, that being the amount of tax assessed against him as owner of property in said Rockford precinct to the amount of $1685; and that the defendant took the property mentioned in the declaration, by virtue of the authority of said warrant, as Sheriff and Collector, for the purpose of making said tax from it.

His second special plea is substantially like the first, except that it sets forth that the warrant was signed by three of the Bridge Commissioners.

The other defendants pleaded jointly not guilty, and two special pleas setting forth substantially the same state of facts as in Maynard's special pleas.

The plaintiff joined issue on the pleas of not guilty, and de-

murred specially to all the special pleas, which demurrers were sustained by the Court. The parties went to trial upon the issue joined, and judgment was rendered in favor of the plaintiff for sixty five dollars. Shaw took an appeal to this Court.

The appellant assigns for error that the Circuit Court erred in sustaining the demurrers.

The cause was argued *ex parte* by the counsel for appellant at an early day in the term, the counsel for the appellee not having been in attendance. Subsequently, on appearing, he was allowed to join in the errors assigned, and having been furnished with the authorities cited by appellant's counsel, the argument was continued.

*F. Burnap*, for the appellee.

The appellee makes the following points in this case :

1. The Act of the Legislature, which the plaintiffs pleaded in justification of the alleged trespass in the Court below, is unconstitutional and void, because it amounts to a judicial determination that there is a debt due to some person. Acts of 1847, p. 14. It declares a debt and orders an an execution for it. Ib. §§ 1, 2; 1 U. S. Dig. 565, § 227; *Lane* v. *Dorman*, 3 Scam. 240; *Edwards* v. *Pope*, Ibid. 470; *Hampshire* v. *Franklin*, 16 Mass. 84; *State* v. *Fry*, 4 Missouri, 144-5, 189, 191.

2. The proposed tax was for two different objects. If one of these objects was unlawful, it vitiates the whole. There can be no separating the part which is legal, if any be legal, from that which is illegal. *Torrey* v. *Milbury*, 21 Pick. 70; 3 U. S. Dig. 507, §§ 106, 107; *Libby* v. *Burnham*, 15 Mass. 147; *Stetson* v. *Kempton*, 13 Mass. 282; *Bangs* v. *Snow*, 1 do. 188, 189; *Drew* v. *Davis*, 10 Verm. 506.

3. The pleas of the defendants Shaw and Wyman do not state what year they took the assessment of in making out their list. But it must be inferred from the dates, and reference to the statutes respecting the levy of taxes, that they took the assessment of 1846. The Act under

which they justify, was passed Feb. 27, 1847. Monday March 1, 1847, two days after, the County Commissioners' Court held a term, and were at that term required to make the assessment. Rev. Stat. ch. 89, 438, §§ 8, 11, first part, §§ 16, 21, 22, 23, 26 and 30. These sections show the process of assessing and collecting a regular tax. The alleged Commissioners declared their tax March 30th, 1847, made their list and assessment April 30th, and delivered their warrant to the Sheriff, Nov. 29th, 1847. If the assessment of 1846 was taken, the plea is bad, for if the Act meant the assessment of that year, it was void as a violation of the Old Constitution. Art. VIII, § 20. If the Act intended the assessment of 1847, the plea is bad because it does not follow the Act. See *Sawyer* v. *City of Alton*, 3 Scam. 129.

4. The pleas are bad for not showing clearly what year the Commissioners took the assessment of, and if doubtful, must be taken most strongly against them, and the assessment assumed to be that of 1846.

5. The Bridge Commissioners mentioned in the Act, have evidently mistaken the intention of the Act in giving any valuation or assessment to the Sheriff. They were to make a list of *names* and a warrant, and to deliver them to the Collector, and he was to collect fifty cents on $100, according to the assessment of 1847, at the same time when he collected the regular taxes of that year.

6. The question may occur whether the Act in question be public or private. But taken either way, the pleas are bad in not showing by what means Shaw, Wyman, McKenny and Crawford continued to be "Bridge Commissioners" till Nov. 29th, 1847, when they gave their warrant to the Collector. If the Act be public, they must show that they were in by election. Act, § 3. If the Act be private, they must show by quotations from it, or otherwise by allegations of facts constituting their continuance, to enable the Court to judge whether they continued to be Commissioners.

7. If the Act is a private one, it should provide all the means necessary to carry into effect the power it grants; if it do not, that power must fail of execution.

8. The pleas do not show to whom the bridge belonged. Alleging that it was a 'certain bridge of the town of Rockford,' is mere matter of description; and the statement that the public were liable to keep it in repair, contradicts the idea that it was owned by the town; for if the town owned the bridge, it would follow that the town, and not the public, were liable to maintain it. The pleas, however, contradict the common intendment that all bridges belong to the county. Rev. Stat. 482, § 14. It must, therefore, have been built by private individuals who had expended their money in building it, and now seek to be reimbursed, which is the indebtedness declared by the Act.

9. The pleas of the Collector should have shown that the distress was a reasonable one. This is the Common Law doctrine. See Rev. Stat. 442, § 37. It should show why there was such a disparity between the amount of the tax and the property taken.

10. The pleas of the Collector ought to show how the property was disposed of after the distress was made. If the defendant intends to allege a distress at Common Law, he ought to state that he has the beast on hand, ready to to be re-delivered when the tax should be paid, for at Common Law a distress could not be sold. 2 Leigh, 809. The pleas do not refer to any statute, and the intendment, therefore, is that a Common Law distress is meant. But if the pleas intend a distress under the general revenue Act, they must show a compliance with it. Rev. Stat. 442, §§ 35, 36, 37.

A short review of the plaintiff's cases will show that they do not make against the defendant. The most *semblable* of these is *Thomas* v. *Leland*, 24 Wend. 65; see N. Y. Const. of 1821, Art. I, § 1; Art. III, § 1. The Courts are organized, but nothing is said about their powers. No restriction is imposed upon the exercise of judicial power by the Legislature. Ibid, Art. VII, § 7, latter part.

The case of *Norwich* v. *Hampshire*, 13 Pick , is not applicable, nor is that of *Campbell* v. *Mississippi Union Bank*,

How. (Miss.) R. 672. In regard to *Kibby* v. *Chitwood's Adm'rs*, 4 Monroe, 94, and *Trustees of Paris* v. *Berry*, 2 J. J. Marsh. 483; see 3 Scam. 243, 244, 245.

*O. Peters*, upon the same side.

1. The plaintiff below (Dennis) is not shown by the pleas to have been in default. It does not appear that ten days had elapsed after demand made for the tax. Rev. Stat. 442, §§ 34, 35. It is not sufficient to allege that there was a demand and refusal. To allege that the demand was legally made, does not show that ten days had elapsed.

2. The warrant or authority from the Commissioners is not sufficiently set out in any of these pleas. The Commissioners are limited in their authority, and of a very special jurisdiction. To justify the trespass, they must show the authority under which they acted, and that they acted within their charter of authority. *Pierce* v. *Benjamin*, 14 Pick. 359; *Toof* v. *Bentley*, 5 Wend. 276; *Brewster* v. *Hyde*, 7 New Hamp. 206; 1 Chitty's Pl. 539-40; Phil. Ev. Cowen & Hill's notes, pp. 964, 1013, 1021, 1104, 1288; *Caldwell* v. *Eaton*, 5 Mass. 403; *Sharp* v. *Speir*, 4 Hill's (N. Y.) R. 81, 86.

3. The Act gives no power to make distress for the tax. It confers no power to execute its provisions. It makes no reference to the general revenue law, nor in any way directs how the payment of the tax is to be enforced. *Toof* v. *Bentley*, 5 Wend. 276.

4. The pleas show that three only of the commissioners signed and issued the warrant. The act of declaring the tax was judicial; that of making and issuing the warrant was ministerial. The distinction is, that where the act is judicial, a majority may act; but where it is ministerial, it must be the act of all. Bac. Abr. tit. "*Authority.*"

5. The pleas should show what property was assessed, whether real or personal, and how much of each, and what. Otherwise, the tax payers could have no means of making an issue, whether they were properly taxed or not. By this

Act, they have no power to appeal from the Commissioners, no remedy for the irregularity of the tax, but in a suit of this kind.

6. The pleas nowhere allege or show that Dennis was the owner of the property taxed at the time of the passage of the Act, or the declaration of the Commissioners for the tax was made. If the property had been alienated or destroyed before the right to levy the tax was created by the Act, he (Dennis) was not liable to be taxed for it, and when the defendants set up the justification, they must show that Dennis was liable to be taxed.

7. The Act violates § 20, Art. 8, of the old Constitution. That section manifestly intends that each tax shall be based on a valuation. It does not authorize past valuations. The valuation of 1840 will not answer for the basis of tax in 1847, or any other year. Taxes are not to be made on valuation only, but they have ⸲regard to ownership also ; so that the property may be taxed against the owner, and this can be done only by making a valuation for each assessment. If the Legislature can go back a year, they may twenty years.

8. The term of office of the Commissioners expired in August, 1847, and there is no allegation that they had been re-elected, according to the provisions of the Act. The allegation that they continued Commissioners is insufficient. In the case above cited from N. Hampshire Reports, the Court required that it should be shown that the town meeting voting the tax was regularly called and legally holden.

*J. Marsh* & *J. M. Wight,* for the appellant, in conclusion.

The questions presented in this case by the special demurrers, to wit: 1st, that the Act under which the defendant below justified is a private Act, and is not sufficiently set forth in their pleas ; 2d, that the pleas do not aver whether the defendants Shaw and Wyman were acting as Bridge Commissioners by virtue of their original appointment or election ; 3d, that it does not appear by the pleas who owned or was bound to keep said bridge in repair; and 4th, that the

pleas do not show from what year the assessment was taken, are not only entirely unimportant; but, a very slight attention to the case, as presented by the record, will furnish full answers to them.

There is surely enough of the Act set forth in the pleas to show a sufficient power under which the defendants below were acting; and a demurrer is not a very efficient mode of bringing the other parts of the Act before the Court, so as to enable them to judge whether it is a public or private Act. However, the plaintiffs in error contend that it is to all intents and purposes a public Act; not a general Act, to be sure; but still, none the less a public Act, because it operates upon all persons and property alike, within the particular limits. But this point is clearly and definitely settled in 1 Kent's Com. 459, and in *Bank of Utica* v. *Smedes,* 3 Cowen, 662, (684.)

The second and fourth objections to the pleas are not well taken, because the pleas directly aver every necessary fact in those respects, and whether the bridge was owned by and was to have been kept in repair by the people of Rockford precinct, or Winnebago county, or neither of them, has nothing to do with the effect of the law.

We come now to the only question really involved in the case, to wit: Is the Act under which the defendants below justified constitutional.

It is insisted that it is unconstitutional, because the Legislature assumed that there "was an indebtedness," and that the tax should, in part, be appropriated to discharge it. If, indeed, it were true that this particular provision is unconstitutional for any reason, *non constat,* that the other provisions are also void. And more especially might this view be urged when it is considered that no where in the record is it intimated that the Bridge Commissioners have ever assumed to appropriate the first cent to any other purpose than "repairing and maintaining the bridge." *Campbell* v. *Miss. U. Bank,* 6 How. (Miss.) R. 625, Opinion of the Court, and authorities cited on pages 672, and 677; *Edwards* v. *Pope,* 3 Scam. 470.

But we insist that it is clearly within the legitimate sphere of the legislative power to provide a fund by levying taxes, for any object or purpose in any part of the State. And it is not an argument against the exercise of this power that the Legislature may not always act wisely ; or even that it may sometimes be exercised corruptly. Who ever heard it intimated that the Legislature has not the power to levy taxes specifically to pay off claims in favor of particular individuals ? If this may be done where the whole State is concerned, why not where a county, a city, or precinct ?

Distinct communities, as counties, cities or towns, often have local interests peculiar to themselves, and dependent upon such circumstances, that no general laws can reach, or be adapted to them, and yet it may be of vital importance to them, as in this instance, to have the legislative aid precisely suited to their condition.

Of that character is the Act now in question, and if we had no other guide to a correct conclusion, the constant and uniform practice of the Legislatures of all the States, in all time past, so that "the memory of man runneth not to the contrary," in passing just such laws, might well be regarded as a strong reason in favor of their constitutionality.

While, however, the constitutionality of such laws has been often questioned, the Courts of different States have uniformly, in a great variety of cases, and without a single exception maintained their constitutionality. *Thomas* v. *Leland,* 24 Wend 65 ; *Norwich* v. *Co. Comr's.* 13 Pick. 60; *Sawyer* v. *City of Alton,* 3 Scam. 127 ; *Vanderbilt* v. *Adams,* 7 Cowen, 349; *Trustees of Paris* v. *Berry,* 2 J. J. Marsh. 483.

It is insisted against the constitutionality of this law that the Legislature assumed to act judicially in determining the existence of an indebtedness. This objection is more specious than sound. Where no liability is fixed in favor of any person against another—where no amount is defined, no person designated to, or from, whom it is due—and no time or manner of payment determined—it would require a

nicety of perception possessed by very few to discover in
such a case the usual requisites of a judicial determina-
tion.

Although this point must depend upon the particular pro-
visions of this Act, yet as the cases of *Lane* v. *Dorman*, 3
Scam. 238, and of *Edwards* v. *Pope*, ib. 465, very clearly
indicate what Acts of the Legislature the Supreme Court
of this State have heretofore regarded as judicial, or other-
wise, we insist that those cases settle this question beyond
controversy.

It is also gravely contended by defendant in error that this
Act is in violation of section 20, of the 8th Article of the Con-
stitution, because forsooth that the Act provides that the
Commissioners shall take their tax list from "the then last
assessment."

Such an argument might do very well in the political
arena, in support of the peoplish doctrine that it is the pe-
culiar birthright of every American freeman, not only to
discuss, but intuitively to understand the constitutionality of
every Act of our Legislatures.

We apprehend, however, that such an argument, based
upon such trivial reasoning, will hardly find much favor in
this Court.

On the contrary, not only because a question of constitu-
tionality is involved in this case, but because very important
interests in every part of our State depend upon the validity
of these local and special laws, the sound conservative doc-
trine may well be urged at this time, that " Courts are very
reluctant to pronounce an Act of the Legislature void or un-
constitutional; and they will not do so, but in cases of clear
necessity, and where the Act is in plain and obvious conflict
with some express provision of the Constitution; and that
too where the Act is so palpably unconstitutional that there
can be no chance for a reasonable doubt, or difference of
opinion." *Adm'rs. of Byrne* v. *Adm'rs of Stewart*, 3 Des-
sua. Eq. R. 466, 476–7; *Campbell* v. *Miss. U. Bank*, 6 How.
(Miss.) R. 672–7; *Lane* v. *Dorman*, 3 Scam. 240; *Edwards*

v. *Pope,* ib. 465 ; *Cochran* v. *Van Surley,* 20 Wend. 360 ; (382) ; *Sawyer* v. *City of Alton,* 3 Scam. 127.

Again, it is objected that the pleas are defective because they do not aver with sufficient certainty that the levy was not made until the expiration of ten days after the tax was demanded by the Collector.

There is no force in this objection, because, first, the pleas do aver in general terms that the tax was demanded as the law required ; second, the defendants below having severed in their pleas, and this objection being only available (if at all) against Maynard alone, it cannot be taken advantage of here to sustain this judgment, which is entire against all the defendants upon their demurrers. It only, however, requires a plain, common sense construction of the section of the statute under which it is presumed the Collector acted (Rev. Stat. 442, § 35,) to meet the whole objection. The plea states that the Collector demanded the tax of Dennis, and that he refused to pay, &c. If he had not refused, then, perhaps, the Collector should have waited ten days before making a levy, and perhaps, also, it might have been necessary to make such averment, but we insist that the statute does not require the Collector to wait at all after a refusal; and surely this Court will not so construe this section as to' involve the palpable absurdity of requiring the Collector to fold his arms and quietly wait ten days after the tax payer has refused to pay his tax.

The Opinion of the Court was delivered by

CATON, J. The first section of the Act of the 25th of February, 1847, under which all the defendants in the Court below justified, authorized the levy of a special tax upon all the taxable property in Rockford precinct, "for the purpose of repairing and maintaining the bridge across Rock River, at Rockford, and to defray the debt incurred in its erection, and repair; said tax not to exceed fifty cents on one hundred dollars of taxable property." In the second section, two of the defendants, Shaw and Wyman, and two other persons,

are appointed "Bridge 'Commissioners of the Rockford
Bridge," and they and they and their successors are made
a body corporate and politic, and are vested with the power
to declare the amount of tax to be levied, and are required
to make out and deliver to the Collector of Winnebago coun-
ty, a list of all persons liable to taxation under the Act; such
list, together with the amount and valuation of taxable pro-
perty "to be taken from the last assessment of taxable pro-
perty in said county," and the commissioners were required
to deliver to the Collector a warrant for the collection of the
tax.   This second section also authorized the Commission-
ers, with the proceeds of the tax, to keep the bridge in re-
pair, and to discharge past indebtedness, if they thought
proper; previous to the payment of such debts, however, the
Commissioners are required to settle and state all the ac-
counts in relation to said bridge.   These two first sections
only are set out in the pleas, nor is it material to notice the
balance of the Act.

First, it is objected that this Act is unconstitutional, be-
cause it imposes a tax upon Rockford precinct to pay the
private debts of individuals, incurred in the erection of this
bridge.   The particular portion of the Constitution supposed
to be violated, is not pointed out, even admitting that the tax
was to be assessed as supposed.   But it does not appear,
either from the Act itself or from this record, whether the
"past indebtedness" referred to in the Act was due from in-
dividuals or from the public.   But admitting the fact to be
as stated upon the argument, that individuals had become
personally responsible for debts incurred in the construc-
tion of this bridge, we have no doubt that the Legislature
had a right to impose a tax upon the precinct to provide for
the payment:   It will hardly be denied that the Legislature
has the right to impose a local tax upon a town or city, a
precinct or county, for some local improvement, as the erec-
tion of a bridge, or the repair of a road.   In doing this, to
be sure, it cannot say that one man shall pay all and the
others none, or that one shall pay one dollar, and another

ten, for the tax must still be uniform, and upon the value of the property which each one has, so that the burthen press- es alike upon the whole community. But the Legislature must necessarily have the right to say how large that com- munity thus subject to the tax shall be, whether a city or only one of its wards, or a precinct, a county, or the whole State. If the Legislature had the right to impose this tax to build a bridge, it would be equally lawful to purchase one, or to pay for one already constructed for the public accom- modation. But this not a case of first impression. *Thomas* v. *Leland*, 24 Wend. 65, is, in fact, a much stronger case than this, and fully answers the objection now made. There certain citizens of the city of Utica had executed their bond to the State to pay into the treasury $38,615, to defray the extra expense of terminating the Chenango canal at that place. Subsequently, the Legislature passed a law imposing a tax upon the owners of real estate in Utica for the purpose of paying that bond. This law the Supreme Court held to be constitutional, upon the ground that the money had been already expended in the construction of a public work, by which the owners of such real estate had been especially benefited. Even admitting, as counsel suppose, that the Constitution of New York does not prohibit the Legislature from exercising judicial powers, it in no wise weakens the authority of this case, for the imposition of a tax for a spe- cified purpose is in no sense the exercise of a judicial power, but it is purely and strictly legislative.

But it is said that in the Act before us the Legislature has found and determined the existence of a debt, and thus trenched upon the powers exclusively conferred upon the Ju- diciary. This Act bears no analogy to those upon which the decisions referred to were made. The most that can be said of this Act is, that it assumes that there may be debts unpaid which were incurred in the erection or repair of this bridge, but it does not undertake to determine their nature or amount, or to whom due, or from whom. All of this is referred to the Commissioners, to ascertain and determine;

nor even then does the Act make it imperative upon them to pay such debts out of the proceeds of such tax. Whatever there is involved in this Act of judicial power, or even of discretion, is vested in the Commissioners, and is not attempted to be exercised by the Legislature. Indeed, in no part of this Act can we discover the remotest attempt on the part of the Legislature to exercise judicial powers.

There is another objection urged to the validity of this law. The Act directs the Commissioners, in determining who is liable to pay said tax and the amount each shall pay, to be governed by "the last assessment of taxable property in said county." It is insisted that this is an unjust criterion, for a man might have disposed of all the taxable property assessed to him in the last assessment before this tax was actually declared by the Commissioners. This objection is more refined than practical, and if allowed, would at once annihilate the power of taxation. The assessment of the tax and the valuation of the property, are never simultaneous acts. The county tax is assessed, as declared by the County Commissioners' Court at their March term, and the assessment of the valuation, and owners of the taxable property need not be completed till September following. Under this system the same injustice may be committed, for a man may be compelled to pay a tax for a whole year on property which he has only owned for a single day. Indeed, the same horse may be assessed to two different individuals for the same year, for each might own him at the time the assessor takes the list of his property, and yet a third person may have owned him at the time the tax was actually imposed. In the same way other property might go unassessed altogether. In the imposition of taxes, exact and critical justice and equality are absolutely unattainable. If we attempt it, we might have to divide a single year's tax upon a given article of property among a dozen individuals who owned it at different times during the year, and then be almost as far from the desired end as when we started. The proposition is Utopian. The Legislature must

adopt some practical system, and there is no more danger of oppression or injustice in taking a former valuation, than in relying upon one to be made subsequently. We have no doubt but this Act is clearly within legislative power and must be enforced.

. It is further objected, that these pleas do not show that ten days intervened between the time when the demand was made for the payment of the tax, and the time of the levy or distress. This objection assumes that the Collector in the execution of the warrant for the collection of this tax must be governed by the provisions of the general revenue law. But there is as much propriety in saying that he should be governed by the provisions of section 8, chapter 25, Rev. Stat., which provides for the collection of taxes in incorporated towns where a demand previous to the levy does not seem to be required. The case of the tax before us assimilates much nearer to these local corporation taxes than to the general revenue of the State. But admitting the applicability of the provisions of the general revenue law, and we do not think the objection well taken. By section 32, chapter 89, Rev. Stat., the Collector, on receiving the assessment list, is required to proceed to collect the taxes charged in said list, by calling upon each person residing in said county at his or her usual place of residence, and requiring payment thereof. Sec. 34 provides that the Collector, in case of the absence from home of the tax-payer, shall leave a written or printed notice with some member of the family, requiring payment of the tax within ten days of the date of the notice, and that said notice shall be deemed a sufficient demand for the taxes of such person. And the 25th section is as follows : "In case any person shall refuse or neglect to pay his or her taxes when demanded, or within ten days thereafter, it shall be the duty of the Collector to levy the same together with the costs and charges that may accrue by distress and sale of the personal property of such person as ought to pay the same wherever the same may be found in the county. No real estate of any person shall be

sold for taxes, while personal property of such person can be found by the Collector." We are of opinion that this section does not inhibit the Collector from making the distress till after the expiration of ten days from the demand, where the demand is personal as required by section 32, but leaves it discretionary with him to make the distress or not within that time. Were we to adopt any other construction, the demand made by the Collector would but afford facilities to the tax-payer to defraud the revenue, and the Collector might be compelled to stand by powerless, and see the party remove his property without the State with the avowed purpose of avoiding the payment of the tax. Such an intention ought not to be imputed to the Legislature, unless it is clearly indicated by the language used. Here the statute makes it imperative upon the Collector to make levy at all events, if the tax is not paid within ten days after the demand, but contains no intimation that he may not make the levy before that time. The language is so imperative, that if he does not make the levy as soon practicable after the ten days have expired, he would be responsible for any loss which might accrue by reason of such neglect, and the County Commissioners would be authorized to withhold a credit for such delinquent tax, where it might have been been made by a prompt levy. In case a personal demand is not made, but the notice is left as is required in section 34, then the demand may be considered as incomplete till the expiration of the ten days within which, by the terms of the notice, the party has to pay the tax.

It was also objected on the argument, that the warrant as stated in some of the pleas, was not issued by all the Commissioners. A careful examination of the record will show that the demurrers do not raise this question. A joint demurrer is filed to the second and third pleas in each set of pleas, and as the second pleas are not obnoxious to the objection taken, we cannot say, in the language of the demurrers, "that the said second and third pleas are not sufficient," &c. As the question is not raised, we do not

Shaw *v.* Dennis.

choose to decide it. Although, as the Commissioners are by the Act made a corporate body, which may act by a majority of the corporators, and as the issuing of the warrant was a corporate act, it would seem to follow that the warrant was well issued by the majority.

The judgment of the Circuit Court is reversed with costs and the cause remanded.

*Judgment reversed.*

NOTE BY THE REPORTER.—After the decision in this case was pronounced, the counsel for the defendant moved the Court for an order directing the Circuit Court to grant leave to withdraw the demurrer, and to plead to the declaration.

TREAT, CH. J. said that such an order was unnecessary; that, upon the case being remanded to the Circuit Court, the case would stand as if it had not been in this Court, and the pleadings would be subject to the order of that Court.

TRUMBULL, J. said that the judgment of the Circuit Court was reversed because the demurrer had been improperly sustained; that upon the case going back to that Court, the party would of course be entitled to withdraw his demurrer and plead over. It is for this purpose that the cause is remanded.