The People *ex rel.* Wetmore and others, Respondents; *v.* The Board of Supervisors of the county of New York, Appellants.

In a tax levy for the county of New York passed by the legislature of 1860, the supervisors were empowered to raise and collect not exceeding $80,000, to pay whatever amount should be found due to contractors with certain commissioners of records appointed by a law of 1855, and the comptroller of the city was authorized to pay from the amount so collected, whatever sum should be judicially determined to be due.

*Held,* that inaction and delay by the board of supervisors to raise the required amount, was equivalent to a refusal to comply with the law.

Also that the alleged unconstitutionality of the act of 1855, under which the said commissioners were appointed, was not involved upon a motion for a mandamus requiring the board of supervisors to raise the amount certified by the commissioners to be due within the sum authorized to be raised. That question could be raised and disposed of upon the judicial determination, to be had before the comptroller was authorized to *pay.*

A peremptory mandamus was allowed on the relation of the commissioners of records of the city and county of New York, requiring the board of supervisors to raise by tax the sum of $72,034.26, for the purposes designated in the act of 1860. (Laws of 1860, p. 1024.)

The facts on which the mandamus was granted, were substantially these.

On the 13th of April, 1855, the legislature passed " An act for the appointment of commissioners of records for the city and county of New York," which provides as follows :

" Sec. 1. William C. Wetmore, Jonathan Nathan, Richard Busteed and George P. Nelson, are hereby appointed commissioners of records for the city and county of New York, with full powers to examine into the condition of the records, documents, maps and indices in the offices of the clerk, register and surrogate of said city and county, and to have the same copied and printed in such form, and to such an extent, as they may deem proper, and to do such further acts for the preservation and convenient examination of the same as the

public interest may require. Said clerk, register and surrogate shall be ex officio commissioners in reference to their respective offices."

" SEC. 2. The said commissioners shall receive no compensation for their services. The necessary expenses incurred by them shall be paid by the county treasurer upon the certificate of said commissioners, and the supervisors of said city and county are hereby authorized to raise by tax the amount required to defray the same." (Laws of 1855, p. 763.)

On the 17th of April, 1860, the legislature passed the annual tax bill for the county of New York, the sixth section of which provides as follows:

" SEC. 6. And the said board of supervisors are hereby empowered to cause to be raised and collected in manner aforesaid, the further sum not exceeding $80,000, to meet and pay whatever sum, up to that amount, *as may be found due* to the contractors, with the commissioners of records of the city and county of New York. The comptroller is authorized to pay said amount when the same shall be judicially determined." (Laws of 1860, p. 1024.)

It appeared that on the 15th of November, 1855, the commissioners of records entered into a contract with McSpedon & Baker to prepare index books, on a new and more perfect plan, of all instruments recorded in the books of the register's office, and to print and bind one thousand sets thereof, at prices fixed in the contract; that the contractors proceeded with the execution of the work; that prior to 1860, they had received under the contract, upon the certificate of the commissioners, from moneys raised by tax by the board of supervisors under legislative authority, the sum of $192,877.80; that all moneys raised for the purpose of defraying the necessary expenses incurred by the commissioners had been exhausted; that no funds remained in the hands of the county treasurer applicable to that purpose, and that there was due to McSpedon & Baker, under their contract, the further sum of $58,957.12, which was duly certified by the commissioners in conformity with the act.

VOL. II.    37

It appeared, in like manner, that there were due to other parties, for services performed by the direction of the commissioners under the authority of said act, various sums certified by them and specified in the moving papers, augmenting the amount required to be raised for the purposes designated in the act of 1860, to the aggregate sum of $72,034.26.

On the 22d of May, 1860, the commissioners certified in duplicate, to the board of supervisors, the amounts so incurred, and made the usual requisitions for the raising thereof by tax.

It was alleged in the moving papers that down to the 26th of July, 1860, the board of supervisors neglected and refused to raise such amounts or any portion thereof, that they did not intend to raise the same or to take the necessary steps therefor, and that they were preparing to issue their warrant for the collection of the taxes of the city and county without including any levy or appropriation for the purposes above referred to.

On the 9th of August following, an affidavit was made on behalf of the board of supervisors by the president, in opposition to the application, alleging that the committee to whom the question had been referred had reported against including these amounts in the tax levy; that on the 17th of July the report was recommitted in order that there might be a new report; that the committee still had the matter under advisement; that the board had not refused to comply with the requisitions, and that the president did not know the intention of that body, and had no means of information until final action should be had.

The affidavit also alleged that McSpedon and Baker had attempted the previous year to compel the board by mandamus to raise money for a like purpose, and that such attempt had thus far failed, though the proceedings were still pending on appeal from an order refusing to quash the return of the board; that such appeal involved the question whether the act of 1855 was constitutional, and that it would be pressed to argument at the next September General Term.

The affidavit further alleged that the act of 1855 appointing the commissioners of records was unconstitutional and void. It further alleged that at the time the expenditures in question were said to have been incurred by the commissioners, there was no appropriation in the county treasury to pay the same or any part thereof. It also alleged that the board had no means of ascertaining that the expenses in question were incurred or that the same were necessary, other than the certificates of the commissioners of record. It appeared by the affidavit that a meeting of the board had been held on the 7th of August, 1860, and that the board had then adjourned to the 28th of August.

On the hearing at Special Term before Judge SUTHERLAND on the 12th of September, 1860, a peremptory mandamus was granted; and the order was subsequently affirmed on appeal to the General Term. From that decision the board of supervisors took the present appeal.

*A. R. Lawrence, Jr.,* for the appellants.

*John W. Edmonds,* for the respondents.

PORTER, J.   It is quite evident from the inaction and delay of the board of supervisors, as well as from the grounds on which the application for a mandamus was resisted, that the board did not recognize its obligation to raise the moneys in question under the act of 1860. There was, it is true, no formal refusal; but we think the court below was right in holding that, under the circumstances disclosed in the affidavits, the neglect of the board was equivalent to a refusal to comply with the requisition. (*The Queen* v. *The Vestrymen of St. Margaret,* 8 Adolphus & Ellis, 889, 904; *The People* v. *Supervisors of Richmond,* 20 N. Y., 253.)

The question whether the act of 1855 was constitutional is not necessarily involved; and such questions are never considered in this court unless they are essential to the determination of the appeal. (*Frees* v. *Ford,* 2 Selden, 176.) The authority which the supervisors were called upon to

exercise was conferred by a subsequent law, the validity of which is entirely clear. (Laws of 1860, p. 1024, § 6; *Thomas* v. *Leland*, 24 Wendell, 65; *Town of Guilford* v. *Supervisors of Chenango*, 3 Kernan, 143; *Brewster* v. *City of Syracuse*, 19 N. Y., 116.) The board was empowered, by the act of 1860, to raise and collect by tax, a fund, not exceeding $80,000, and sufficient to pay such amount as might be found due to the contractors with the commissioners of records. It was neither charged with the duty nor clothed with the power of making payment. The act left it with the courts to determine whether the claimants. were entitled to the moneys so raised, and the comptroller was not authorized to pay it over until the rights of the contractors should be judicially ascertained.

The record discloses the fact that, at the time of the passage of the act of 1860, a litigation was pending between the contractors and the appellants, in which an issue was made as to the validity of the law appointing the commissioners; and the design of the legislature evidently was, to direct *the raising of a fund* sufficient to meet the demands of the claimants, for services rendered by them for the public benefit and on the pledge of the public faith, and the performance of which was certified by the proper officers in conformity with the provisions of the act of 1855. It is equally plain that the legislature did not intend to direct the payment of the fund from the treasury, until the rights of the parties beneficially interested should be fixed by legal adjudication.

It is insisted that the judicial determination, which, by the terms of the act, was to precede the application of the fund by the comptroller, was a condition precedent to the authority of the board to raise it. Such a construction would be subversive of the plain purpose of the provision. If the precise amount to be paid was to be fixed by judgment before the action of the supervisors, there would have been no propriety in the limitation of the levy to $80,000. The law required them to *raise*, within this limit, so much as should be sufficient to meet the amount found due to the

contractors; and this was readily ascertainable by the certificates of the commissioners, which the statute had made presumptive evidence of the fact. (Laws of 1855, p. 763, § 3.) In respect, however, to payments by the comptroller from the fund in question to the contractors, the legislature superadded the further condition that the amounts should be judicially ascertained. The design of the law-makers is quite apparent, and, though the language in which the intent is expressed is loose and inartificial, we are bound to give full and fair effect to the substance of the provision.

The order of the General Term should be affirmed.

All the judges concurring,

Order affirmed.