THOMAS *vs.* LELAND and others.

An act of the legislature imposing a tax upon a *local* district of the state, in reference to a public improvement, such as a canal, is *valid* and *constitutional*, notwithstanding that previous to the passage of such act, a number of individuals of such district had entered into a *bond* to the state, by which they bound themselves to pay the whole expense of the improvement.

CONSTITUTIONALITY of a statute. The plaintiff declared against J. D. Leland, H. Shays, G. Langford and S. M. Mason, in *trespass :* the *first* count being in trespass *quare clausum fregit*, and taking and carrying away his goods, and the *second* in trespass *de bonis* ʼ *asportatis.* The three first named defendants justified, that they as commissioners for assessing and levying a tax on the city of Utica, in pursuance of an act of the legislature, passed 11th May, 1835, (*vid. Statutes of* 1835, *p.* 35,) assessed the sum of *$278, on certain real estate in the city of Utica, of [ *66 ] which the plaintiff was owner ; that they appointed *S. M. Mason*, the fourth defendant, special collector to collect the tax so assessed, and that by virtue of a warrant issued by them, Mason entered upon the premises of the plaintiff and seized and took the goods, &c. to satisfy the tax. To this plea the plaintiff demurred. The defendant *Mason* separately put in a plea similar to the plea of the other defendants. To the plea of Mason, the plaintiff replied that the money authorized to be raised by the act of 1835, was secured to be paid to the state by the *bond* of several individuals, (naming them) who were *liable* to pay the same to the state, and that the money assessed upon his estate was not the *debt* of him, the plaintiff, nor was *he* liable to pay the same, and this, &c., wherefore, &c. The defendant demurred to the replication.

*S. Stevens*, for the plaintiff, insisted that the act of the legislature under which the defendants attempt to justify is a *void* act, and should be so declared by the court. The individuals named in the replication had voluntarily obligated themselves by bond, to pay into the treasury of the state a certain sum of money in consideration of the termination of a public work, (the *Chenango canal*,) being changed from *Whitesborough* to *Utica.* The statute authorizing this sum of money to be assessed upon the owners of real estate, in the city of Utica, was therefore taking the property of one set of

individuals for the benefit of another set of individuals.  The existence of such a power in the legislature has been uniformly denied in this country, and by the constitution the property of *an individual* cannot be taken even for *public use* without making compensation.  *Hobbes,* the most ingenious of all advocates for the absolute powers of government, does not go further with his doctrine on this point, than to say that the property which a subject has in his goods, consists not in a right to exclude the *sovereign* from the use of them, but in the right to exclude *all other subjects.  Vid. opinion of Senator Tracy, in Bloodgood* v. *Mohawk & H. R. R. Company,* in court for correction of errors, 18 *Wendell* 56.  He also cited 2 *Kent's Comm.* 340.

[ *67 ]  *C. P. Kirkland,* for the defendant, insisted that all questions of *internal improvement* and of *general* or *local taxations* as applicable thereto, are exclusively within the power of the legislature ; and that consequently, whether a change in the termination of the Chenango canal should be made, and whether it should be regarded as a work of general benefit, to be paid for from the common fund, or as a work of local character, to be paid for by local taxation, were questions exclusively for legislative determination, with the decision of which no other department of the government can interfere.  The various acts of the legislature on this subject are *in pari materia,* and when looked at together it will be seen that a *local taxation* was authorized for a *local benefit.*  As to the power of the legislature in cases of this kind, and when their acts will be deemed void, he cited 1 *Black. Com.* 160, 1 *Kent's Comm.* 399, *and* 420, 8 *Wendell,* 101, 12 *id.* 328, 18 *id.* 30, *Nott & M'Cord's R.* 387, 4 *Wheaton,* 316, 9 *id.* 738, 8 *Coke,* 212, 234, *Hobart,* 87, 12 *Mod.* 687.  He contended that the fact of a bond having been given by individuals to secure the payment of the increased expense, did not deprive the legislature of the power to impose a *local tax,* when they subsequently became satisfied that a local benefit had been conferred equally advantageous to the owners of property in a particular district or place.

*By the Court,* COWEN, J.   It is objected by the counsel for the plaintiff, first, that the statute of 1835 sought to take the plaintiff's property without his consent, and appropriate it to the payment of a private debt due from others ; and that such a statute is unconstitutional and void.  The consequence is not denied by the counsel for the defendants, who insists that the statute is, in effect, no more than any of our ordinary acts imposing local taxes for local improvements of a public character, such as highways and bridges.  The object of the statute, and the share of individual or public concern in the tax, may be collected from the acts mentioned in the pleas, and more fully, when connected with the bond set forth in the replication to the second plea of the defendant Mason. . Some time previous to March

1834, *the canal commissioners, thinking that the Chenango canal  [ *68 ] then in progress of construction, might be more economically connected with the great western canal at *Whitesborough* than at the city of *Utica*, had fixed on the former place for its termination. Then came the act of March 24th, 1834, authorizing the commissioners, on the extraordi- nary expense of a termination at Utica being provided for by those more immediately interested, to change the termination to the latter place. Here- upon several individuals, either from public spirit, or in respect to their own profit, joined in a bond to the people, conditioned to pay into the treasury, for the benefit of the canal fund, $38,615, the estimated excess, and so much more as should make good the contracts affected by the change. Thereupon the contemplated change was made. Afterwards, on the 11th May, 1835, the legislature deeming the debt thus contracted by individuals, unreasonably partial and onerous, passed the statute now in question, the ob- ject of which was to levy the tax on the owners of real estate in the city of Utica. The general purpose of raising the money by tax was, therefore, to construct a canal, a public highway, which the legislature believed would be a benefit to the city of Utica as such; and independently of the bond, the case is the ordinary one of local taxation to make or improve a highway. If such an act be otherwise constitutional, we do not see how the circumstance that a bond had been before given securing the same money, can detract from its validity. Should an individual volunteer to secure a sum of money in itself properly leviable by way of tax on a town or county, there would be nothing in the nature of such an arrangement, which would preclude the legislature from resorting by way of tax, to those who are primarily, and more justly liable. Even should he pay the money, what is there in the constitution to preclude his being reimbursed by a tax?

But, secondly, it is said that, if the act had in view the construction of the canal, then it was unconstitutional, as seeking to take private property for public use, without just compensation, or any compensation. To sustain this *argument it must be denied that the general profit  [ *69 ] of the community to which we belong will warrant a tax affecting our property. One answer in the case at bar is, that the improvement in question was, in itself, a compensation to the plaintiff. Such, at any rate, was the theory of the proceeding, and we must intend that it was carried out in practice. Such was the view taken by the legislature; and they must be left to judge of the compensation.

But the argument proves quite too much. It would go to cut off entirely many acknowledged powers of taxations; such as that which raises money to relieve the poor, or establish and keep on foot common schools, to build bridges, or work the highway. It confounds two distinct legislative powers; a simple power of taxation, with the power of taking private property for

tax to build a lunatic asylum, may be mentioned as one instance. If the power to impose such a tax were to be rested on the ground of individual pecuniary benefit to each one who should be called on to contribute, it is quite obvious that it would not be maintained for a moment. Yet who would doubt that such might be imposed on a local community, a county or even a town? I admit that this power of taxation may be abused; but its exercise cannot be judicially restrained so long as it is referable to the taxing power. The only check lies at present in that power being usually exerted on considerable bodies of men, who possess a control in a greater or less degree over its agents.

Judgment for the defendants.