Town of Guilford *v.* Cornell.

———•◆•———

THE TOWN OF GUILFORD *vs.* CORNELL and CLARK, and THE BOARD OF SUPERVISORS OF CHENANGO COUNTY.

By an act of the legislature, passed on the 5th day of February, 1852, the county judge of Chenango county was required to appoint three commissioners, to determine the amount of costs and expenses that had been incurred by Cornell and Clark, late commissioners of highways of the town of G. in said county, in prosecuting and defending certain suits with a turnpike company, &c. The 3d section of the act directed the board of supervisors of the county of Chenango to cause the amount awarded by the commissioners to be levied upon the taxable property *of the town of G.,* to be collected for the benefit of Cornell and Clark. The commissioners appointed under the act made an award in favor of Cornell and Clark for $2134.65. The town of G. then brought this action, to restrain the board of supervisors from levying and collecting that sum, of the taxable property of the citizens of said town, and also to prohibit Cornell and Clark from adopting any means, under the said act, to enforce the collection of the award. *Held,* on demurrer to the answer,

1. That the said act of the legislature was constitutional and valid.
2. That the action could not be maintained by the town of G., the statute in question not affecting the town in its corporate character.

The legislature possesses the power to levy and apportion taxation upon all the taxable persons and property within the state, or within any particular political district, or portion of it.

The sections of the constitution, declaring that no person shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen of the state, unless by the law of the land, or the judgment of his peers, and that private property shall not be taken for public use, without just compensation, have no application or reference to the taxing power of the legislature.

Whenever a moral obligation exists, on the part of the government, to relieve one of its citizens, sufficient to support a promise if the same state of things existed

Town of Guilford *v.* Cornell.

between individuals, the legislature has the right to recognize the obligation, and discharge it by the imposition of a tax. Per GRAY, J.

The legislature being the only department of the government that can provide the relief, and being unrestricted in the exercise of their taxing power, except as to the mere manner of passing bills for that purpose, must of necessity be the exclusive judges when the interest or the honor of the government justify a tax, and of what portion of the state ought in justice to pay it. Per GRAY, J.

THIS was an appeal from a judgment rendered at a special term, on a demurrer to the answer of Cornell and Clark, two of the defendants. By an act of the legislature, passed on the 5th day of February, 1852, the county judge of Chenango county was required to appoint three commissioners, whose duty it should be to take proof and determine the amount of the costs and expenses that had been incurred by said Cornell and Clark, late commissioners of highways of the town of Guilford in said county, in prosecuting and defending certain suits with the Butternuts and Oxford Turnpike Company; and also growing out of the non-payment of said costs and expenses by said town. (*Laws of* 1852, *p.* 12.) The commissioners appointed by the county judge under said act, after hearing the respective parties, made an award in favor of Cornell and Clark, for $2134.65, on the 13th day of October, 1852. By the 3d section of the act it is also made the duty of the board of supervisors of the county of Chenango to cause the amount of such award to be levied upon the taxable property of the town of Guilford, and to be collected for the benefit of Cornell and Clark, in the same manner as other taxes are collected by law. This action was commenced by the town, for the purpose of restraining the board of supervisors from levying and collecting the said sum of money of the taxable property of the citizens of said town; and also of prohibiting Cornell and Clark from adopting any means, under the said act, to enforce the collection of said money, on the ground that said act of the legislature was unconstitutional and void. Clark and Cornell, in their answer to the complaint, set up and insisted that the act was constitutional and binding; that by its provisions they were entitled to the money awarded in their favor, to be raised and collected by tax, in the mode prescribed in said act.

Town of Guilford *v.* Cornell.

The plaintiffs demurred to said answer; insisting that the act in question was unconstitutional and void. Other matters of defense were alleged in the answer, and other causes of demurrer assigned; but the principal question in the case was as to the validity of the act of the 5th of February, 1852. The court, at special term, decided that the law under which Cornell and Clark obtained the award was unconstitutional and void; that all the proceedings under said law were of no avail; and by the judgment of the court the defendants were perpetually restrained from taking any steps for the collection of said award, or any part thereof. From this decision Cornell and Clark appealed. The board of supervisors did not answer.

*S. S. Merritt,* for the appellants. I. The town of Guilford had no power to commence this action. (1.) No such power can be obtained from the law in question. The second section of the act provides for giving notice of the time and place of the taxation of the costs and expenses by the commissioners. This provision gave the town the right to appear before the commissioners, and perhaps contest the amount, and conferred nothing more. Certainly, the power to *institute a suit* in the name of the town cannot be inferred from the provision in regard to this notice. Neither can any such power be implied from the direction in section three, to apportion the amount of the award upon the taxable property of the town. (2.) The statute entitled "Of the powers and rights of towns as bodies corporate," (1 *R. S. 3d ed. p.* 384, *&c.,*) confers no such power. The matters set forth in the complaint do not affect the town in its *corporate* capacity. They do not affect the town lands or other property, nor, indeed, any right or interest of the town, but its taxable inhabitants only. The provision of the statute, (1 *R. S. 3d ed. p.* 388, *sec.* 9, *sub.* 4,) giving power to the electors of a town "to direct the institution of suits at law or in equity," only relates to such suits as the town may *rightfully* commence, and does not confer any power to institute a suit in respect to matters not affecting the interests of the town as a corporation; and the complaint in this action does not show that any controversy exists between

the town of Guilford and Cornell & Clark, which gives the town a right to institute a suit. There is no statute conferring upon the town of Guilford the power to protect its inhabitants from an illegal tax ; and opposition to such a tax is the right of the individuals to be affected by it, and not of the town. (*See Thomas* v. *Leland,* 24 *Wend.* 65.) Corporate powers are strictly construed, (2 *Kent's Com.* 7*th ed.* 344,) and by 1 *R. S. 3d ed. p.* 385, *sec.* 2, it is provided, that "No town shall pos- sess or exercise any corporate powers except such as are enume- rated in this chapter, or shall be specially given by law, or shall be necessary to the exercise of the powers so enumerated or giv- en." The case of *Cornell* v. *The Town of Guilford,* (1 *Denio,* 510,) is an instance of the strictness with which the powers of towns are construed. (*See also Hodges* v. *The City of Buf- falo,* 2 *Denio,* 110 ; *Boom* v. *The City of Utica,* 2 *Barb.* 104 ; and *Farmers' Trust Co.* v. *Carroll,* 5 *Barb.* 649.) The section of the statute above quoted, in connection with the adjudged cases, effectually preclude any idea that the right to institute this suit can be *implied,* either from the provisions of the act in ques- tion, or from the general powers and rights of towns. The indi- vidual tax-payers of Guilford will not be precluded, by the judg- ment in this case, from again litigating the same questions. This fact should be fatal to the action, as it shows that the town as a corporation does not represent the tax-payers, for the purpose of resisting the tax. (3.) But should the foregoing objections be overruled, then it is insisted that it appears from the pleadings, that this suit was instituted without any authority or direction from the town, and illegally. This fact is set up in the answer, and appears by the supplemental complaint. In the affidavit of Samuel A. Smith, verifying the original complaint, it is stated that he is the agent of the town, in the prosecution of the action ; but this affidavit forms no part of the complaint. (*George* v. *McAvoy,* 6 *How. Pr. Rep.* 200.) Besides, the statement is de- fective in not showing *how* he became such agent, and it appears to be a conclusion or inference merely, drawn from his powers as supervisor. Smith as supervisor had no authority to direct the institution of this suit. (1 *R. S.* 3*d ed. p.* 399, *sec.* 2. *Cornell*

v. *Town of Guilford*, 1 *Denio*, 514, 15.) This objection is not obviated by the subsequent resolutions passed by the electors of Guilford. The vote of the electors, taken the 1st day of March, 1853, cannot have effect, by relation to the time of the commencement of the action. Besides, the electors of a town, in town meeting assembled, are not authorized to adopt a suit already commenced; but the statute is, they shall have power "to direct the *institution* of suits," &c. (1 *R. S. 3d ed. p.* 388, *sec.* 9, *sub.* 4.) It is plain, from this language, that the direction is to *precede* the institution of suits. In the case of *Cornell and Clark* v. *The Town of Guilford*, it is decided that "The powers of the electors of towns to bind the town are conferred by statute, *and are limited to such acts as are prescribed by law.*" The objection here made appears affirmatively in the case, and must be fatal in every stage of the proceeding. No act of the attorney who assumes to appear for the town, or of the town's supervisor, or of both combined, can supply the want of a direction from the electors of the town, in town meeting assembled, to institute the suit. The town, as a body corporate, is not bound by the proceeding, cannot be made liable for costs, and is only in name, a party to the action. The injunction in this case was issued without authority. (4 *Barb. R.* 17, 9. 8 *id.* 597. 2 *Hill*, 434.)

II. The law in question is not in conflict with the constitution. (1.) The case for the plaintiff stands strongest under the provision of the constitution, (*Art.* 1, § 6,) which declares that no person shall be deprived of his property without due process of law, and that private property shall not be taken for public use without just compensation. (*Taylor* v. *Porter*, 4 *Hill*, 146, 7.) It has been expressly adjudged by the court of appeals, that neither of these prohibitions apply to cases of taxation. (*The People* v. *Mayor, &c. of Brooklyn*, 4 *Comst.* 423.) The provision that private property shall not be taken for public use without just compensation, only applies to cases where specific property is taken—such as land or goods—by right of eminent domain. (*Id.* 424.) It has never been held, out of this case, that money could not be taken by way of taxation, and applied to

*private* purposes. Indeed, if such a power was to be found no-
where else, it would necessarily result from article 1, § 9 of the
constitution, which provides that the assent of two-thirds of the
members elected to each branch of the legislature, shall be re-
quisite to every bill appropriating the public moneys or property
for local or *private* purposes. And it must be conceded, if the
legislature can constitutionally pass a law donating money al-
ready in the treasury for *private* purposes, that it can equally
pass an act for raising money by taxation, for such purposes.
Money in the treasury must be the proceeds of taxation in some
of its forms, and if it be appropriated to purposes other than the
discharge of the public burthens, the deficiency must be supplied
by further taxation. So the effect upon the tax-payer is pre-
cisely the same, whether the appropriation of money to private
purposes be from funds already in the treasury, the fruits of past
taxation, or it be authorized from assessments *to be* made for the
specific purpose. In cases of appropriations for *private* pur-
poses, the question has always arisen under the clause requiring
the assent of two-thirds of the members elected to each branch
of the legislature, to the passage of the bill. (*See Smith's
Com. on Con. and Stat. Law,* 417 *to* 437.) (2.) But this is not
a bill appropriating the public moneys or property for local or
private purposes. (*Morris* v. *The People,* 3 *Denio,* 399. *Hol-
ley's case, Smith's Com.* 431, 2.) The allowance to Cornell and
Clark, under that act, is in no sense a gratuity. It is a provis-
ion to indemnify them for liabilities incurred in good faith, and
under color of their office as commissioners of highways of the
town of Guilford; and there was a full consideration for the lia-
bility imposed by the tax. A public officer is a mere agent, and
while acting in good faith, he is bound to exercise ordinary at-
tention and diligence only. (*Supervisors of Albany* v. *Dorr,*
25 *Wend.* 440. *Lawler* v. *Keaquick,* 1 *John. Cas.* 174. *Story
on Agency,* § 302. *Holley's case, Smith's Com.* 431, 2.) It is
the duty of the government to protect its agents when they act
honestly, even though no means are provided by law for doing
so; and making provision for such a case is only discharging a
public obligation. Public officers are more likely to err in re-

Town of Guilford *v.* Cornell.

gard to their authority to commence actions, than in the performance of almost any other duty. They should not be held as insurers in such cases; and to deny to the legislature the power to make special provision for their indemnity where they fail in suits commenced by them, would result in great inconvenience to the public, and often in the ruin of the officer. In this case, Cornell and Clark acted in good faith, and it was the duty of the town to protect them; and such was the view taken by the legislature. The case of *Morris* v. *The People,* in the court of errors, (3 *Denio,* 381,) before cited, is an authority fully sustaining this law. Lott, senator, in delivering the prevailing opinion of the court, there says, (page 399,) " It frequently occurs that services are rendered and expenses incurred by public officers, for the payment of which no means are provided, and laws are from time to time passed making provision for compensation and reimbursement;" and he expressly sanctions the practice. And Hand, senator, who delivered a dissenting opinion in the case, in effect, concedes this point. (P. 388.) (*See also the People* v. *Lawrence,* 6 *Hill,* 244, 5; *Munsell* v. *Lewis,* 2 *Denio,* 224; *Thomas* v. *Leland,* 24 *Wend.* 65.) Appropriations of money from the treasury for purposes of precisely the same character of the claim in this case, have been repeatedly made in this state; as instances, see the act for the relief of Russel B. Burch, (*Laws of* 1848, *p.* 46;) Act for the relief of the Chenango canal contractors, passed April 16, 1836, (*Laws of* 1836, *p.* 201,) and amended in 1837, (*Laws of* 1837, *p.* 99, 321.) The last mentioned act has been passed upon by the courts, and its constitutionality has never been questioned. (*Munsell* v. *Lewis,* 4 *Hill,* 635; *S. C.* 2 *Denio,* 224.) The act in relation to suits against district school officers, passed May 1, 1847, (*Laws of* 1847, *ch.* 172,) and amended in 1849, (*Laws of* 1849, *ch.* 388, *p.* 545,) accords in principle with the one in question. That act provides for payment of costs and expenses incurred by school officers, for acts performed by virtue of, or *under color* of their office, and applies to suits *which had been commenced* when the act took effect, as well as to those which should thereafter be commenced; and further provides that the claim shall be col-

lected *by tax upon the school district.* (3.) There never has been, in this state, any constitutional limitation of the taxing power of the legislature. It may impose a tax for any purpose it sees fit, and apportion it upon any part of the state. See the observations of Verplank, senator, in *Cochrane* v. *Van Surlay*, (20 *Wend.* 365, 381—3.) See also per Cowen J., (5 *Hill*, 329 ;) 1 *Kent's Com.* 488. The late Chief Justice Marshall, in the case of *McCulloch* v. *Maryland*, (4 *Wheat.* 431,) states, as a proposition not to be denied, *that the power to tax involves the power to destroy.* And in the same case, he says, (p. 428,) "It is admitted that the power of taxing the people and their property is essential to the very existence of government, and may be legitimately exercised on the objects to which it is applicable, to the utmost extent to which the government *may choose* to carry it. The only security against the abuse of this power is found in the structure of the government itself. In imposing a tax, the government acts upon its constituents. This is in general a sufficient security against erroneous and oppressive taxation. The people of a state, therefore, give to their government a right of taxing themselves and their property ; and as the exigencies of the government cannot be limited, they prescribe no limits to the exercise of this right, resting confidently on the interests of the legislature, and the influence of the constituents over their representatives, to guard them against its abuse." And again, at page 430, he speaks of it as " unfit for the judicial department to inquire what degree of taxation is the legitimate use, and what degree may amount to the abuse of the power." This language is quoted, as containing sound doctrine, by the court of appeals, in *The People* v. *The Mayor, &c. of Brooklyn*, (4 *Comst.* 426,) and it is there decided that the power to tax implies the power to apportion the tax as the legislature shall see fit, and that there is no constitutional restriction upon the exercise of either power. And in the same case, the court remarks as follows, page 433 : " The remedy for unjust or unwise legislation, is not to be administered by the courts. It remains in the hands of the people, and is to be wrought out by means of a change in the representative body, if it cannot be

otherwise obtained." This right to apportion taxation is also asserted in *Thomas* v. *Leland*, (24 *Wend.* 65, 69;) and *Morris* v. *The People*, (3 *Denio*, 398, 399, *per Lott, senator*.) The power of the legislature to impose the tax in question, and to apportion it upon the town of Guilford, was, therefore, ample and unrestricted, and the propriety of the act cannot now be questioned. The defense in this case might safely be rested upon this point alone. (4.) The act in question is not an encroachment upon the judicial powers of the government. It does not reverse, modify, or in any manner affect the judgment of the courts, in the action commenced by Cornell and Clark against the town of Guilford, nor determine that such judgment was wrong as applied to that case, or that the claim of the plaintiffs, in that action, was a legal demand against the town. It does not, therefore, come in conflict with any of the adjudged cases which have held particular legislative acts to be an encroachment upon the powers of the judiciary. The authorities relied on by the plaintiff, are all cases where the legislative department has attempted to interfere with judicial functions, by vacating or reversing a judgment, or granting a new trial, or allowing an appeal to vacate a judgment, or the doing of some similar act. Surely, the passage of a law imposing a tax upon any particular locality, whatever may be the purpose to which it is to be applied, cannot be regarded as coming in conflict with the powers of the courts. And the passage of the act in question is clearly referable to the taxing power. (5.) Nor is it objectionable as interfering with vested rights, in the repeal of the act of 7th February, 1851. (*Butler* v. *Palmer*, 1 *Hill*, 329, 330.) The last mentioned act, without establishing or even recognizing the validity of the claim of Cornell and Clark, submitted to the electors of the town to determine what compensation, *if any*, should be awarded to said Cornell and Clark; thus making the electors judges in their own case. The question was submitted, and, as a matter of course, the claim was rejected by a large vote. This determination left the matter precisely where it stood before. The court of errors had already adjudged that the town was not liable to pay the claim, and the electors,

when the question was submitted to them, resolved that they *would not* pay. The exemption from liability existed independently of the act of 1851 and the vote under it, and was founded upon the fact that the electors of the town had no power to direct the institution of the suit against the turnpike company. (1 *Denio*, 510.) It is therefore difficult to see how the determination of the electors of Guilford, under the act of 1851, created any new rights, or how the repeal of that act interfered with vested rights in property. The exemption from liability, could not be made more effectual by a vote of the town, even under the sanction of a special act. (*Butler* v. *Palmer*, 1 *Hill*, 329.) The third section of the act of 1851 declares that " The decision of the electors upon the said claim shall be final and conclusive." Conclusive of what ? Not of the question as to the liability (technical) of the town, for that had been settled by the court of errors, and the judgment of that court was " final and conclusive." The only consequence resulting from the act of 1851, was the determination of the electors that they *would not* pay. This " determination" cannot be deemed a " *vested* right." But the legislature in 1851 had no power to prevent future legislation in the premises, by any provision in the law itself; and the doctrine of the sacredness of vested rights has never been extended so far as to prevent the exercise of the taxing power by the legislature. Besides, what right of the town of Guilford, as a corporation, has been affected by this repeal ? The restriction in question only applies to individuals and *private* corporations. (*See Benson* v. *The Mayor, &c.* 10 *Barb.* 244 ; *and per Woodbury, J., Merrill* v. *Sherburne,* 1 *N. H. Rep.* 213.) A town is but a *quasi* corporation, created by a general law. An individual taxpayer of the town of Guilford might make this point, if it be a good one, but the town itself cannot. (6.) An act of the legislature cannot be set aside as unconstitutional, unless its incompatibility with the constitution is manifest and unequivocal. (*Per Lott, senator, Morris* v. *The People,* 3 *Denio,* 394. *Ex parte McCollum,* 1 *Cow.* 564. *Fletcher* v. *Peck,* 6 *Cranch,* 87. 2 *Cond. Rep.* 308.) The presumption must always be in

Town of Guilford *v.* Cornell.

favor of the validity of laws, if the contrary is not clearly demonstrated. (*Cooper* v. *Telfair*, 4 *Dal.* 14. 1 *Cond.* 211.)

III. On demurrer to an answer, the defendant is at liberty to raise the objection that the complaint does not state facts sufficient to constitute a cause of action; and if the objection be well taken, the complaint will be dismissed. (*Schwab* v. *Furniss*, 4 *Sand.* 704.) If the complaint sets forth no good cause of action, the defendant is entitled to judgment, though his answer be demurred to, and the demurrer sustained. (*Noxon* v. *Bentley*, 7 *Howard's Pr. Rep.* 816. *Lipe* v. *Becker*, 1 *Denio*, 568.)

*H. R. Mygatt*, for the respondents. I. The proper parties are before the court. (1.) The electors of towns at their annual town meetings, have the power to direct the institution or defense of suits. (1 *R. S.* 340, § 5, *sub.* 4.) Whenever a controversy or cause of action shall exist between a town and individual or corporation, such proceedings are had as between individuals. (1 *R. S.* 356, § 1.) In such suits the town shall sue or be sued by its name, except when town officers are authorized to sue in their name of office. (1 *R. S.* 356, § 3.) This suit is not in a case where any officer is specially authorized to sue. It is therefore properly in the name of the town. The town, in town meeting, has power to direct suits, and to appoint a suitable agent, and authorize the employment of an attorney. (*Cornell* v. *The Town of Guilford*, 1 *Denio*, 514.) This town has appointed its supervisor its agent. In his affidavit verifying the complaint, he swears that he is the agent of the town, for the prosecution of the action. The attorney swears that he is attorney. "Persons acting publicly as officers of a corporation, are presumed to be rightfully in office : acts done by a corporation, which presuppose the existence of other acts to make them legally operative, are presumptive proof of the latter." (*Angel & Ames on Corporations*, 221, 222. *Best on Presumptions*, 63, 64.) As said in Best on Presumptions, page 64, "with respect to the general principle of assuming a regularity of procedure," says Sir D. Evans, "wherever acts are apparently regular and proper, they ought not to be defeated by the mere suggestion of a possible

irregularity." The maxim is, "*omnia praesumuntur rite esse acta.*" "All public officers, though not expressly authorized by statute, have a capacity to sue, commensurate with their public trusts and duties." (*Supervisor of Galway* v. *Stimson*, 4 *Hill*, 136.) The defendants moved to dissolve the injunction in this case, on the decision of which motion, the opinion by Justice Mason determines that the proper parties are before the court. (2.) "The town of Guilford," only, could bring this action. Not only *the act* of February 5th, but the defendants, Cornell and Clark, as well as the commissioners, recognize "the town of Guilford," as the only party to be affected. The act of February 5, 1852, directs a "notice to the town of Guilford, of the time and place of the taxation," and directs the board of supervisors to "levy the same" upon the taxable property of the town of Guilford. Before the commissioners, the town of Guilford appeared by their supervisor and counsel, and that without objection; and the town by counsel there objected to any action by the commissioners under the act. This is the case of a special grievance, arising out of a common injury to the inhabitants of Guilford, and they are entitled to the interference of this court to protect their private rights. It is competent for a municipal corporation to prosecute a bill in equity, where the injury is an immediate one to the property of the corporation. The case of the *Commissioners of Moyamensing* v. *Long*, (1 *Parsons' Select Equity Cases*,) is conclusive. Private individuals, freeholders and inhabitants, cannot file a bill to settle any question relative to the common rights of the inhabitants of the town. (*Denton* v. *Jackson*, 2 *John. Ch. R.* 335.) The case of *Reynolds* v. *The Mayor of Albany*, is a case to establish that this action would not be sustained in favor of a tax-payer. (8 *Barb.* 597.) (3.) As it will be proved, in points hereafter, the act of February 5, 1852, is unconstitutional. The case of *Osborne* v. *The U. S. Bank*, (9 *Wheat.* 738,) is an authority for restraining the collection of a tax, imposed by an unconstitutional statute. (4.) The electors of the town of Guilford, at their annual town meeting, affirmed this action. The award of the commissioners was October 13, 1852. By

Town of Guilford *v.* Cornell.

statute, towns, at the annual town meetings only, give directions as to the suits of the town. The supervisors assembled in November, 1852; and the injunction was issued on the first day of November, to prevent the assessment of the tax. The annual town meeting in Guilford, is in March. In order to prevent the irreparable mischief that would result from the collection of the tax, the injunction was awarded. The respondents were, by order, permitted to make a supplemental complaint, by which the town of Guilford, (if any authority was necessary,) affirm this action, and direct its continuance.

II. The act of February 5th, is in violation of the 16th section of article 3d of the constitution, which provides, that "no private or local bill which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title." This bill, by its title, is "An act for the relief of Daniel Cornell and Ransom Clark." The bill embraces the said relief, and also repeals a former act of the legislature, and there is no allusion to the repeal, in its title.

III. The act of February 5th, is unconstitutional, as the legislature has no power to destroy vested rights, by a repeal of the statute under which they were acquired. On the 7th February, 1851, the legislature passed a law, submitting the entire claim of Cornell and Clark, to the decision of the town of Guilford, in town meeting; and that act declares, that the decision of the electors of the town, "upon the said claim, shall be final and conclusive." (*Session Laws*, 1851, *p.* 17.) At the town meeting in Guilford, of the 4th of March, 1851, the electors decided against said claim, by a vote of three hundred and seventy-two against, to sixteen in favor of the claim. Said act of February 5th, 1852, took away the vested rights acquired by the town of Guilford, by the previous act of February 7th, 1851. As said in 10th Barbour, at page 244, " It is the settled law of this state, that vested rights in property, acquired by virtue of a statute, cannot be divested or destroyed, by a repeal or modification of the statute." The case of *The People* v. *The Supervisors of Westchester*, (4 *Barb.* 64,) is there cited as sustaining the sacredness of vested rights, the court remarking,

that such rights "rest, not merely upon the constitution, but upon the great principles of eternal justice, which lie at the foundation of all free government." In the case in 4th Barbour, at page 71, the court remark, that "the constitution declares that 'the legislative power of the state shall be vested in a senate and assembly.' It can hardly be said that under this general power of legislation, it is omnipotent; that it can pass acts against natural right and justice, and subversive of decency and good order. Such power is the prerogative of despotism, not of free government." It was justly said, in the case last cited, "That excessive legislation is the great legal curse of the age. It is the mighty vortex, which is drawing every thing within its grasp." The omnipotence of the legislature is limited by constitutional bounds. (*Kent's Com. Lecture* 20.)

IV. The act of February 5th, violates the first section of article one, of the constitution of this state, which is as follows: "No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless *by the law of the land,* or the judgment of his peers." In *Taylor* v. *Porter,* (4 *Hill,* 147,) the court, Bronson, J., declares, that "the words 'by the law of the land,' as here used, do not mean the statute passed for the working of the wrong. That construction would render the restriction absolutely nugatory, and turn this part of the constitution into mere nonsense." After referring to the language of Lord Coke, that by the words, "by the law of the land," means by the due course and process of law, the court further says, "the meaning of the section then seems to be, that no member of this state shall be disfranchised or deprived of any of his rights or privileges, unless the matter shall be adjudged against him, upon trial had according to the course of the common law. The words due process of law, in this place, cannot mean less than a prosecution or suit instituted and conducted according to the prescribed forms for determining the title to property." The following cases are conclusive, and affirm the doctrine of Chief Justice Bronson: *Holmes* v. *Holmes,* (4 *Barb.* 300.) *White* v. *White,* (5 *id.* 481, *and cases there cited.*) The effect of this illegal act, and award, is, to transfer

Town of Guilford *v.* Cornell.

from the tax-payers of Guilford, to the defendants, Cornell and Clark, over $2000. They want the property of the town; but the legislature cannot aid them in making the acquisition. The first clause of our constitution was established for the protection of personal safety, and private property. If the property of the tax-payer is subject to the caprice of our legislature, acting without rule or precedent, and without hearing the party, stability in property will cease, and justice be at an end. If the government are interdicted from taking private property for public use, without just compensation, how can the legislature take it from one man, and dispose of it as they think fit? As remarked in the case of *White* v. *White*, (5 *Barb.* 485,) "In a case like this, the court can never find a motive to transcend its duty, and I trust it will always be found to possess independence enough to do that." The cases cited by the counsel for the appellants, are all of them cases in which private property is taken for a public use, and on payment of a just compensation.

V. The act of February 5th is unconstitutional, on the ground of conflict with the judicial department of the government. All of the state constitutions recognize the political maxim, borrowed from Montesquieu, "that the legislative and judicial powers of government, ought to be forever separate and distinct from each other." An act of the legislature which authorized A. to sell so much of the lands of a deceased person, as would be sufficient to raise a specific sum, to be applied in extinguishment of certain claims against the estate of the deceased, was held unconstitutional, as being a judicial determination. (*Lane* v. *Dorman*, 3 *Scam. R.* 240, *cited in Smith's Com.* 500.) An act of the legislature, directing the assignment of dower to a widow, was held void. (*Edwards* v. *Pope*, 3 *Scam. R.* 465.) So an act granting a divorce, and directing the payment of alimony, has been considered a judicial act, and therefore unconstitutional. (*Crane* v. *Megnis*, 1 *Gill* & *John.* 475, *cited in Smith's Com.* 501.) In New Hampshire, a question was submitted to the judges, whether the legislature could authorize a guardian of minors, by a special act, to make a valid conveyance of the real estate of his wards. The decision was decisive against the

power, on the ground that it was, in its nature, both legislative and judicial. (4 *N. H. R.* 372, *cited in Smith's Com.* 503.) In Maine, Vermont and New Hampshire, it has been repeatedly held, that the legislature could not constitutionally pass an act, granting an appeal, or a review, or a new trial in any case. (*Lewis* v. *Webb,* 3 *Greenl.* 326. *Bates* v. *Kimball,* 2 *Chip.* 77, *cited in Smith's Com.* 518.) In the case of *Lewis* v. *Webb,* the legislature of Maine passed an act, by resolve, granting an appeal from a decree by a judge of probate, and directing the supreme court to sustain the appeal. It was held to be a judicial act and void. In another case in Maine, the question whether the legislature had authority by the constitution, to grant a review of a suit between private citizens, was decided against the act. (*Durham* v. *Lewiston,* 4 *Greenl.* 122, *cited at length in Smith's Com.* 521 *to* 523.) In *Bates* v. *Kimball,* stated in *Smith's Com.* 523 to 527, in Vermont, it was adjudged that an act, the effect of which was to vacate a judgment and direct another trial in matters determined by that judgment was void. (*See also Merrill* v. *Sherburne,* 4 *N. H. R.* 199. In *Woart* v. *Winnick,* (3 *N. Hamp. R.* 477,) retrospective laws are denounced, and the union of the legislative and judicial power, in the same branch of government, is said to be in its essence, tyranny. In *Officer* v. *Young,* (5 *Yerger,* 320,) it was determined that any act, "retrospective in its operations, which took away from some, vested rights, and gave them to others, that changed the nature of obligations," was unconstitutional. In *Webster* v. *Reid,* (11 *Howard U. S. R.* 447,) the court decide, that a law that gives a special and extraordinary remedy, is in conflict with the modes of judicial procedure. Finally, as said in *Ervine's Appeal,* (16 *Penn. R.* 268,) " When individuals are selected from the mass, and laws are enacted affecting their property, without summons or notice, at the instigation of an interested party, who is to stand up for them, thus isolated from the mass, in injury and injustice, or where are they to seek relief from such acts of despotic power? They have no refuge but in the courts, the only secure place for determining conflicting rights by due course of law."

Town of Guilford *v.* Cornell.

CRIPPEN, P. J.    The judgment given at special term is found-
ed entirely upon the invalidity of the act in question; the appeal
therefore presents that question for review.    If the law is valid
and constitutional, then it follows that the judgment appealed
from should be reversed.

It is unnecessary to cite authorities to show that the demurrer
admits every material allegation in the answer, to be true.    Be-
fore proceeding to examine the principal question presented by
the appeal, it may be useful to advert to some of the facts which
stand admitted by the demurrer.    Cornell and Clark allege in
their answer that they were commissioners of highways in the
town of Guilford, in the year 1836; that the Butternuts and
Oxford Turnpike Company took possession of a highway and
bridge in said town without having the damages appraised and
paid, according to law; that the electors of said town, at an
annual town meeting held in the month of February, 1836, passed
a resolution authorizing and directing the said commissioners of
highways to prosecute the said turnpike company for the wrong-
ful and unlawful taking of said highway and bridge; that said
Cornell and Clark, in pursuance of the resolution of said town,
and by virtue of their office of commissioners of highways, em-
ployed an attorney under whose advice and counsel an action
was brought against said turnpike company; that said action
was tried at a circuit court in Chenango county, in the month
of September, 1839, and a verdict of $250 rendered in favor of
said commissioners, on which a judgment was entered against
the turnpike company; an appeal was brought from the judg-
ment, which was afterwards reversed with costs.    Cornell and
Clark paid said costs as they were compelled to do, and in due
time made an application to the auditing board of said town to
have the amount of the costs and expenses incurred and paid by
them in said action allowed against the town.    The auditing
board, however, refused to allow said account.    Clark and Cor-
nell afterwards prosecuted the town to recover the amount of
their claim for the costs and expenses incurred by them in the
action against the turnpike company.    This action was referred
to three referees, and a report therein made in favor of Cornell

and Clark against the town, for the sum of $657.22. On the application of the town, the supreme court set aside the report, with costs; the case was then appealed or carried to the court for the correction of errors, and it was there decided in favor of the town. The foregoing recited facts are admitted by the demurrer. And it is also admitted by said demurrer, that Cornell and Clark entered upon the litigation with the turnpike company as officers and agents of the town, and in obedience to said resolution.

No one will attempt to deny that where a town, in its corporate capacity, enters into a litigation with individuals or corporations, and authorizes the officers and agents of the town to prosecute actions and incur expenses, such town is bound by the most sacred principles of justice and common honesty to indemnify such officers and agents against all pecuniary loss and damage properly arising out of such litigation; no matter whether the town is successful or not in the litigation, if such failure is not imputable to the negligence or want of honesty of its agents or officers; the morality of the claim and the liability of the town is no less obligatory than it would be against an individual, in a like case. The accumulated costs of the whole litigation, emanating from the action which was instituted under the direction of a resolution of the town, has been thrown upon Cornell and Clark, and for which by the strict and rigid rules of the common law they have no redress against said town.

The legislature possesses the power to levy and apportion taxation upon all the taxable persons and property within the state, or within any particular political district or portion of it. It must be conceded, under the facts of this case, that the money awarded to Cornell and Clark under the act of the 5th of February, 1852, should be paid, if at all, by the town of Guilford, and not by the county of Chenango or the state at large. The litigation originated with, and for the benefit of, the town; if the litigation had been successful, the money recovered of the turnpike company would have belonged to the town of Guilford. The legislature was satisfied it was just and proper that the town should remunerate Cornell and Clark for the money

Town of Guilford *v.* Cornell.

expended by them in the litigation with the turnpike company; otherwise the act of the 5th of February, 1852, would not have been passed.

It is a necessary and safe rule, and one that I deem to be well settled, that the power of taxation is exclusively vested in the legislature. In the case of *The Providence Bank* v. *Billings*, (4 *Peters*, 561,) the court lay down the following rule: "That the power of legislation, and consequently of taxation, operates on all the persons and property of the body politic. This is an original principle having its foundation in society itself. It is granted by all, for the benefit of all, and resides in the government as part of itself. However absolute the right of an individual may be to his property, it is still in the nature of such right that it must bear a portion of the public burdens; and that portion must be determined and fixed by the legislature. This vital power may be abused by the legislature; but the interest, wisdom and justice of the representative body, and its relations with its constituents, furnish the only security against injustice and excessive taxation, as well as against unwise and improvident legislation." Again, in 4th Wheaton, 428, the doctrine is clearly laid down, that the power of taxation is essential to the very existence of government, and may be exercised by the legislature on the objects to which it is applicable, to the utmost extent that the goverment may see fit to carry it. In imposing taxes the government acts upon its constituents. The people of the state give to their government a right of taxing themselves and their property; to the exercise of this power there is no limit, except it is founded in the fundamental law. It must be conceded that the power of taxation and the apportionment of taxes and the assigning to each individual his share of the burden, is vested exclusively in the legislature, unless it is restrained by some constitutional provision.

One objection to the validity of the act of the 5th Feb., 1852, is that it violates the first and sixth sections of article one of the constitution. Those sections declare, in substance, that no member of this state shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the

*law of the land* or the judgment of his peers.   And that private
property shall not be taken for public use without just compen-
sation.   The claim of Cornell and Clark against the town of
Guilford is predicated upon a statute of the state, which is strict-
ly the law of the land, within the meaning of the constitution.
It was urged on the argument, that the act in question is local
in its operation, being made applicable only to a single town,
and hence it is in derogation of the constitution.   It has been
decided in several cases that the above sections of the constitu-
tion have no application or reference to the taxing power of the
legislature.   If the construction contended for by the plaintiff's
counsel should be given to the constitution, I am unable to per-
ceive any existing authority or power conferred upon the legisla-
ture for the imposition of taxes for any purpose.   The authorities
clearly settle the question, that the above sections of the consti-
tution have no application to the power of taxation conferred up-
on the legislature.   (*The People* v. *The Mayor of Brooklyn,*
4 *Comst.* 427.   *Taylor* v. *Porter,* 4 *Hill,* 146.)   The words
"law of the land," as used in the constitution, are decided to
mean *by due course of law ;* that is by a trial in the manner pre-
scribed by the principles and practice of the common law.   It is
entirely obvious that the constitution should receive this inter-
pretation ; otherwise all taxation must be held to be in violation
of its provisions, and consequently illegal and void.

  There being no prohibitory constitutional restriction, the legis-
lature possesses the undoubted power to levy taxes upon partic-
ular districts, counties, towns, or other distinct localities, as may
seem just and right according to the benefits derived from the
objects of such imposition.   This principle is fully asserted and
maintained by the court of appeals in the case of *The People* v.
*The Mayor of Brooklyn,* above cited.   Also see *Thomas* v.
*Leland,* (24 *Wend.* 65.)   It cannot be regarded as an open ques-
tion since the decision of the court of appeals.   The legislature,
acting upon the principle of these cases, passed the act on the
5th of February, 1852, for the purpose of affording relief to Cor-
nell and Clark, against the manifest injustice to which they had
been subjected by a refusal of the town to comply with a plain

moral obligation resting upon it, but which could not be reached by the strict rules of the common law.

My conclusion is that the act in question was eminently right and proper to reach the exigency of the case, and fully authorized by the fundamental law of the state. The legislature possessed the right to pass the law, and the merits of the claim of Cornell and Clark furnish strong and palpable reasons for the enforcement of its provisions.

I do not deem it necessary to examine the several other points raised by the plaintiff's counsel on the argument. The principal questions relied upon to sustain the demurrer to the answer, were based upon the alleged invalidity of the act of the legislature. Upon that branch of the case I have given my views.

I am satisfied, however, irrespective of all other considerations, that there is *in limine* a fatal objection to the maintenance of this action. The town of Guilford cannot maintain the action. The corporate property of the town, if it has any, is not affected by the law in question ; neither does it affect all of the inhabitants of the town in common. It only reaches the taxable property in the town. Much of the property may belong to persons not residents of the town ; and it must be conceded that a large class of persons residing there are not affected by the provisions of the law. All persons having no taxable property are of the latter class. I am fully satisfied that the act in question does not affect the town in its corporate character, so as to authorize an action to be brought in the name of the town, under the provisions of the revised statutes, (*Art.* 1 *of chap.* 11 *of title* 1 *of part* 1, §§ 1, 2. *4th ed.* 1 *vol.* 643.)

My conclusion, therefore, is, that the judgment of the special term should be reversed, with costs of the demurrer and of the appeal.

GRAY, J. The injunction in this case restraining the apportionment of the tax under the act of February 5th, 1852, for the relief of the defendants Clark and Cornell, was granted by me, but not without much doubt as to the right of the town of Guilford to maintain this suit in its corporate capacity, even

though the act in question was unconstitutional; and with no less doubt as to the unconstitutionality of the act itself: but the tax was about to be apportioned, and the expenses incident to the collection about to be incurred; and inasmuch as the injunction could not impair the future right to apportion the tax, but would operate as a mere temporary stay of proceedings under it until the questions involved could be more deliberately considered than time would then permit, I deemed it a prudent exercise of power to grant it. The inhabitants of each town, as such, necessarily have interests in common with each other, many of which are by law under the supervision and control of town officers acting in different capacities, and for the sole benefit of the inhabitants of their respective towns, and others which remain under the exclusive control of the town in its corporate capacity. These rights or interests, as a matter of necessity, require legal protection, and for that purpose each town has the power to prosecute and defend suits; it existed at common law from necessity as a quasi corporate power.

The powers and rights of towns are now by statute clearly defined, and as clearly limited. (1 *R. S.* 337, §§ 1, 2.) Each town is invested by statute, in its corporate capacity, with power to purchase and hold lands for the use of its *inhabitants,* to make contracts, to purchase and hold such personal property as may be necessary to the exercise of its corporate or administrative powers, and to make such orders for the use or disposition of its corporate property as may be deemed conducive to the interest of its *inhabitants.* (*Id.* § 1.) All these powers and rights, it must be borne in mind, are conferred upon the town not for the benefit of those who own the taxable property in the town, but for the benefit of the inhabitants of the town, and not for any particular class or portion of them. For the purpose of enforcing and protecting these rights, each town in its corporate capacity has the power to sue. (*Id.* § 1.) The right to exercise that power is given when the town has an existing cause of action against any other town in this state, or against any corporation or individual. (*Id.* 357, §§ 1, 2.) The right to sue or defend is one of the corporate powers conferred.

Town of Guilford *v.* Cornell.

These are the only enumerated cases in which power to sue is given : and to these the town is expressly limited, (*Id.* 337, § 2,) unless a suit is necessary to some of the other enumerated powers conferred. Such necessity could not by possibility exist in this case, inasmuch as all the other powers enumerated relate exclusively to the mere acquisition of property and the control of it for corporate purposes.

The only object of conferring upon a town the power to prosecute and defend suits, obviously was to preserve and enforce the rights accquired under the enumerated powers conferred by statute, and in which those for whose benefit it is given can have none other than a common interest. The right of this town to sue is placed upon the ground that the imposition of the tax in question is a special grievance common to all the inhabitants of the town. If this be so, there can be but little doubt that the town in its corporate capacity is entitled to the aid of this court to restrain its collection, if it is imposed by an unconstitutional statute. But is it so ? Is the grievance common to all the inhabitants of the town ? Clearly not. The tax is imposed upon the taxable property in the town, many of the owners of which may not be inhabitants of it. The property upon which it is imposed is owned by individuals, firms, or corporations. It is not upon the *property* of the town in which no one has a separate interest. There are in every town many inhabitants, ministers of the gospel, whose estate is not worth to exceed one thousand five hundred dollars, and those who have no property, or none but such as is exempt from taxation, who are members of the corporation, and largely benefited by its corporate and administrative powers. They clearly have no interest, either common or separate, to be affected by this tax. Those who have property liable to be taxed, have at most but a common interest in the question ; but no one of them has any interest in the amount for which another is taxed. Their interest in the property taxed, is in no respect blended ; and hence they have no common interest in the subject matter that authorizes the town to interpose its corporate shield between them and those whose duty it is made to apportion or collect the

tax. Before that can be done, a case must be made in which not only the tax-payers have a blended interest, or common right to be affected; but the inhabitants who bear no portion of the burden of taxation, each of whom in common with the tax-payers derives a due portion of benefit from the corporate property of the town, and from its corporate and administrative powers, must also have a common interest to be impaired by the imposition of the tax. Tax-payers assume too much when they assert that a town has corporate capacity for the purpose of shielding their respective estates in the town from an illegal tax. And the town yields to a narrow view of its powers and duties when it concedes that class of its inhabitants to be the only members of its body corporate. A town has corporate powers for a more benevolent and patriotic purpose. One great object in authorizing it to purchase, hold and dispose of property, real and personal, is that under its administrative powers, the benefit of its property may be shed, as well on the poverty-stricken as the more fortunate or affluent, without regard to age or sex, each and all of whom being inhabitants, are members of the corporation and entitled to a due portion of its benefits; and when property common to every class is invaded, the town may interfere, and not before. The act in question does not affect the town in its corporate capacity, but operates exclusively upon the property of the town, having separate owners, many of whom, for aught we know, are not only willing but desirous to bear their portion of the burden necessary to reimburse the defendants, Cornell and Clark, the costs and expenses incurred by them in a litigation commenced and carried on by them in apparent good faith, and in pursuance of a resolution of the electors of the town. If the act authorizing the tax is void, the supervisors are not bound to execute it; or those that are not willing to submit to it can resist it; but such of them as are willing, have a right to submit to the law, constitutional or not, so long as a submission to it affects their respective private properties alone; and the town, as such, has no right to interfere. If every inhabitant of the town was bound to pay a portion of this tax, it would not change the case. Suppose the legislature had authorized a

Town of Guilford *v.* Cornell.

tax to be apportioned upon the taxable property of each stock-holder in a banking corporation in no respect affecting the corporate property ; clearly the bank could not restrain its collection. The fact that the act required the commissioners to give notice to the town of the time and place of taxing the costs and expenses incurred by the defendants, Cornell and Clark, is urged as a reason for holding that the town is a proper party to this suit. That, to my mind, does not imply the right to sue ; that provision would be, and probably was complied with by serving the notice upon the supervisor of the town. If, instead of requiring notice to be given to the town, it had been required to be given to its supervisor, his right to sue in behalf of the several persons upon whom the act operated would hardly have been suggested ; and yet it might have been, with equal force.

The only object in requiring the town to be notified, was that it might, in behalf of those whose property was to be affected by the imposition of the tax upon them, appear in some form and resist an unjust taxation of the costs and expenses for the reimbursement of which this tax was imposed. This being done, the object of the notice was complied with, and the powers and duties of the town under that act were ended ; and those affected by the law left to adopt the same remedy, if any, which the laws had before that provided. Authority was cited on the argument to prove that a municipal corporation may prosecute a bill in equity where the injury is an immediate one to the property of the corporation ; this is not doubted ; a city or village corporation, and perhaps a town, may prosecute a bill in equity, whenever a street or public square, or any other property in which its inhabitants have a common interest, is about to be encroached upon or injured ; and this is the extent of the authority cited on that subject. The principle, however, has no application here. The inhabitants of this town have no common interest in the separate property of individuals upon which this tax operates, and hence the town, as their representative, has no right to sue. The more grave and important questions in this case arise upon the plaintiffs' demand, that by the judgment of this court the statute which the defendants have been restrained from enforc-

ing, be declared void for its repugnance to the constitution. The first objection arises upon the plaintiffs' allegation, that it is in contravention to the 16th section of article 3d of the constitution, prohibiting the passage of any private or local bill embracing more than one subject, and requiring that subject to be expressed in its title. Conceding this bill to be both private and local, it embraces but one subject, and that subject is well expressed in its title as "An act for the relief of Daniel Cornell and Ransom Clark." The mere fact that another statute, exclusively upon the same subject, which had been acted upon, and had therefore ceased to be operative, was in the same act repealed, did not add another subject to the bill. The subject was the relief of Cornell and Clark; and if any number of statutes had to be repealed to relieve them, it would have been in strict adherence to the single subject of their relief in the one particular specified in the law.

The next objection to its validity is that it destroys the vested rights of the town of Guilford, acquired under an act of the legislature of the 7th of February, 1851, by which it was submitted to the electors of that town to determine what amount of compensation, if any, should be awarded to the defendants, Cornell and Clark, for certain costs which they alleged they had sustained in their official capacity, by reason of a litigation with the Oxford and Butternuts Turnpike Company, by which act it was also provided that the decision of the electors upon their claim should be final and conclusive. Under this act the electors of that town, at their next annual town meeting, on the 4th of March following, by a large majority, decided against their claim. There does not seem to me to be much in this objection. If, instead of passing the law submitting the question to the electors of that town, they had referred the petition for relief to a committee of their body, who had reported a bill reciting that the petition had been considered, and declaring that the claimants were not entitled to relief, and that the act should be final and conclusive upon their claim, and the legislature had passed it; or if provision had been made referring the claim to commissioners not of their body, to pass upon their claim, and declaring

Town of Guilford *v.* Cornell.

that their report should be conclusive, and they had reported against it, it clearly could not prevent a subsequent legislature from again considering their claim (resting perhaps upon a stronger state of facts, or urged for stronger reasons,) and passing a bill for their relief. The cases of legislative grants to persons in their individual or corporate capacity, and of rights acquired by either under legal proceedings had in pursuance of a statute, have no bearing upon this question. This statute acted upon the public. The public as such can have no vested rights as against the same public, derived from their own acts or that of their representatives, and aside from the principle that the acts of one legislature cannot bind a subsequent one. Each legislature, as a constituent part of the government, not only acts upon the public in the exercise of its taxing powers, but, as their representatives, may waive any objection which they could raise to its exercise of those powers. And it is no objection to the law that it operates upon a portion of the state only. (*The People* v. *The Mayor of Brooklyn,* 4 *Comst.* 427.) The territory taxed is not dissevered by the laws imposing taxes upon it, and made an independent district invested with power in any form to assert a right not common to the whole state, but it stands in the same attitude the state would, had the legislation complained of affected the whole of it.

The next question in its proper order arises upon the objection that the legislative department of the government has trenched upon the judicial department. This question arises out of the fact that the defendants, Cornell and Clark, before the passage of the act in question, sued the town of Guilford for the recovery of the same costs and expenses provided for in the act, and were beaten, upon the ground that they, as commissioners of highways of that town, had no right to prosecute the suit out of which the costs and expenses arose, even though directed by the electors of the town in town meeting assembled. (*See Cornell and Clark* v. *The Town of Guilford,* 1 *Denio,* 510.) I am unable to see in what respect this act comes in conflict with any power which the judiciary has exercised, or which it deems itself authorized to exercise.

The equity of the claim of Cornell and Clark was not considered by the court, and for the reason that the question presented was one of strict law, depending entirely upon whether authority to sue had been conferred upon them by statute, and the court held it was not, and here its functions ended. They had no right to go further and inquire whether, in consequence of a mutual mistake between the electors of the town and Cornell and Clark, the town ought not to pay the costs growing out of it. The judgment of the court has not been interfered with, or their jurisdiction assumed; all that has been done is to afford relief where the court, if they would, could not; besides, for reasons before stated, the territory taxed cannot raise the objection. It is entirely competent for a state to assume and provide for a debt which it is not bound in law to pay, whether decided so or not, and to apportion it upon a portion of its territory, to which it is justly chargeable. The justice who heard and denied the motion to dissolve the injunction, regarded this law as a means adopted by the legislature for appropriating the private property of each person taxed, to the private use of Cornell and Clark. The case is briefly this:

Cornell and Clark were commissioners of highways of the town of Guilford, and in pursuance of the directions of the electors of that town, they, in their official capacity, prosecuted the Butternuts and Oxford Turnpike Company, and were beaten —not upon the ground that the suit was improperly brought by them, in their capacity as commissioners of highways—but that the right remedy had not been adopted by them. (25 *Wend.* 365.) A suit was then brought by them against the town of Guilford, to recover the cost and expenses incurred by them, in the prosecution of the suit against the turnpike company, and they were again beaten, upon the ground that they had no right as commissioners of highways to maintain the suit out of which the costs and expenses arose. (1 *Denio*, 510.) And thus by mutual mistake of the law, as well on the part of the electors of that town, as of Cornell and Clark, acting as they were directed, and as they supposed their oath of office required them, they have been compelled to pay costs and expenses to a large amount.

Town of Guilford *v.* Cornell.

The court could not relieve them, because the electors acted without statute authority, and hence there was no legal obligation on the part of the town, as such, to pay.

The moral obligation was not and could not be passed upon by the court, for the reason that the whole question turned upon the construction of a statute. An appeal was then made to the legislature, who were of opinion, upon the facts established before them, that Cornell and Clark had acted in good faith in prosecuting the suit brought by them for the benefit of the public; and because by strict legal rules no remedy could be had by them in court, they authorized a public tax to be levied for their relief, and apportioned upon that portion of the state which instigated the litigation, and for whose benefit it was intended. A very similar case in principle has before occurred; and the legislation was upheld. (*Thomas* v. *Leland,* 24 *Wend.* 65.) In that case the legislature authorized a tax, and apportioned it upon the city of Utica; the effect of which was to appropriate the tax paid by each owner of property therein, to the use of certain individuals and in discharge of their private debt. It is true that the object for which that debt was incurred, benefited that city; but it was not incurred at the instance of the city or of its inhabitants; nor did any obligation exist on its part to pay it, that could have been enforced at law. Had the debtors to whose use in effect that tax was appropriated, paid their debt and then sued the city, the result would have been as disastrous to them as was the suit by Cornell and Clark, against the town of Guilford, to them. The fact that the city of Utica derived a benefit from the enterprise of the persons for whose use the tax was appropriated, made it none the less the appropriation of private property to the private use of those whose debt was discharged by it. If the legislature had erred in judgment as to whether the enterprise of the persons for whose use the tax was imposed had been beneficial to the city of Utica, I do not perceive how it could have changed the question. The objection to the appropriation of private property to private use, rests upon the same principle as the

objection to the appropriation of private property to public use without just compensation. None claim that the constitution is violated by imposing a public tax to pay a public debt, or repair the capitol of the state, or for any similar purpose. Such a tax, instead of being apportioned upon the property of the state at large, may be apportioned upon any district or territory of the state principally benefited by the object for which the tax is imposed, and which ought in preference to other portions of the state, to bear the burden. ( *Thomas* v. *Leland,* 24 *Wend.* 65. *The People* v. *The Mayor of Brooklyn,* 4 *Comst.* 427.) It has been said that legislation in such cases proceeds upon the idea that the constitution is satisfied by the compensation which each citizen has received or will receive out of the purpose to which the tax is applied. Concede it to be so, and that the legislature have been entirely mistaken; that those taxed are in reality injured beyond the amount assessed, by the object to which the tax is applied. The idea cannot be entertained for a moment that each tax-payer can resist the apportionment of the tax, upon the ground that it is proposed to apply his private property to public use without compensation. Let such a proposition be once seriously entertained by courts, and the embarrassment produced by it in the assessment and collection of taxes would be disastrous. I have never heard it doubted that whenever a moral obligation exists on the part of the government to relieve one of its citizens, sufficient to support a promise, if the same state of things existed between individuals, the legislature has the right to recognize the obligation and discharge it, by the imposition of a tax. The legislature being the only department of the government that can provide the relief, and being unrestricted in the exercise of their taxing power, except as to the mere manner of passing bills for that purpose, must of necessity be the exclusive judges when the interest or the honor of the government justify a tax, and of what portion of the state ought in justice to pay it. The legislature clearly have no right to impose a tax and apportion it upon the property of an individual, and appropriate it to the use of another. Such a case

Town of Guilford *v.* Cornell.

bears no analogy to a public tax apportioned upon a particular territory, and which operates upon the public, although the territory and the public are comparatively small. It was claimed on the argument that this statute is in conflict with § 1, of art. 1, of the constitution of this state, which declares that " no member of this state shall be disfranchised or deprived of any of the rights or privileges secured to any other citizen thereof, unless by the law of the land or the judgment of his peers." Reference was also made to the case of *Taylor* v. *Porter*, (4 *Hill*, 146,) in which it was determined both upon principle and the authorities cited, that the requirements of the constitution are not complied with by a statute law passed for the purpose of depriving a citizen of the rights thus secured, but that the true meaning of those words " law of the land," is by " due course and process of law," or in other words by a trial had according to the due course of the common law. This case proves too much for the plaintiff's safety. Every law imposing taxes is a statute law, and if this provision of the constitution is applicable to taxes, then all laws imposing them are in derogation of the constitution, and the government from its foundation, has subsisted upon unconstitutional exactions. No citizen ever had the exclusive right to the property of which, in common parlance, he is called the owner ; but it is held now, as it always has been, for the use of the state, to the extent of such exactions as it may deem just and prudent to make from it, for taxes, and for this reason the taxing power of the legislature should not be regarded as a means of acquiring a new right or property in a statute authorizing a tax operating exclusively upon property held by each tax-payer for the use of the state, and which, as against taxes imposed by law, was never secured to any citizen to be held until divested of it by trial at law. The property upon which the tax is apportioned is, to the extent of the amount of the tax imposed, public property held for that use ; hence, property sold, or money paid, for taxes and applied to private use cannot be regarded as an appropriation of private property to that use. But the word property, as used in the constitution, does not include in its meaning money exacted for

taxes. (*The People* v. *The Mayor of Brooklyn*, 4 *Comst.* 424.) I am therefore of opinion that the judgment of the special term should be reversed.

SHANKLAND, J., concurred.

Judgment reversed.

[CHENANGO GENERAL TERM, January 10, 1854. *Crippen, Shankland* and *Gray*, Justices.]