## In re REYNOLDS.

### In re ELMWOOD AVE.

(Superior Court of Buffalo, Special Term. January, 1891.)

1. EMINENT DOMAIN—COMPENSATION—VALIDITY OF REMEDIAL ACT.
    Where a city, in opening a street, injures a building on private property which is adjacent thereto, but none of which is actually taken for the street, it is within the power of the legislature (Laws 1890, c. 393) to require the city to make just compensation to the owner, by assessing the amount of his damages on the property benefited, even though the city could successfully defend against the claim in a court of law.
2. SAME.
    Where half of a double brick house, expensively built, is taken by a city in opening a street, and by reason thereof the other half, belonging to another person, is greatly damaged, so that it cannot easily be put in proper condition, a remedial act of the legislature, requiring the city to compensate the owner of the latter half, is warranted.
3. SAME—RELEASE—ESTOPPEL.
    A city, in opening a street, took property on which was located one half of a double house, the other half of which was owned by another person, and the latter half of the building was greatly damaged. As it was thought no compensation could be allowed the owner, because none of her property was actually taken, the city council requested the legislature to pass an act authorizing it to make compensation, which was done. Laws 1890, c. 393. While the bill was pending in the legislature, the owner of the property made a contract with the city, by which it sold her the portion of the building taken, and she released it from all claims for damages. *Held*, that proceedings by the owner, under the act, to compel the city to pay the damages, should not be stayed because of such contract; it appearing, by the affidavits filed on her behalf, that she signed the contract on the assurance of the corporation counsel that she could procure a small strip of land left between her half of the building and the street, so as to restore her building to a proper condition, and that she was unable to do so, and that the expense of taking down and removing the property sold her by the city was equal to its value; but, if there was any excess of such value over the expense, she should be compelled to allow it, in reduction of damages.

Application by Amelia E. Reynolds, under Laws 1890, c. 393, for the appointment of commissioners to appraise the damages to her property caused by the opening of Elmwood avenue, in the city of Buffalo. The city moves for a stay of the proceedings. Motion denied.

Laws 1890, c. 393, § 1, provides: "The common council of the city of Buffalo is authorized to audit and adjust the amount of damage which has been occasioned to the property of Amelia E. Reynolds, situated, * * * by the opening of Elmwood avenue, * * * after the same has been appraised as hereinafter pro-

vided for. When the amount of said damage is appraised, the same shall be raised by the city by assessment upon the property benefited by the opening of Elmwood avenue, * * * and the amount of such assessment, when collected, shall be paid over to said Amelia E. Reynolds." Section 2 provides: "The amount of such damage shall be appraised by three commissioners, to be appointed by the superior court of Buffalo for that purpose, upon such notice to be given to the city as the court shall prescribe. The report of the commissioners shall be approved by the court before being presented to the common council of the city for audit, and the expense of the proceedings to appraise such damage shall be, by the order of the court, certified to the common council, and by them included in the amount of such damages, to be raised by local assessment, as prescribed in the preceding section."

This act was repealed by Laws 1891, c. 42.

William F. Mackey, for the motion.

Daniel McIntosh and O. O. Cottle, opposed.

BECKWITH, C. J. Mrs. Amelia E. Reynolds was the owner of a lot of land on the north side of North street, in the city of Buffalo, about 44 feet in front and 415½ feet in depth, and Mr. George C. Greene owned a lot of the same dimensions, adjoining on the easterly side. Upon those lots a double dwelling house was erected, in such form that the continued existence of both houses was necessary to preserve their value, and the destruction of one necessarily seriously injured the other. The houses were so situated that the dividing line of the lots passed through the center wall of the houses. In laying out and opening Elmwood avenue, the city took all of the easterly lot and building except a piece about 3 feet in front on North street, diminishing towards the rear to a width of 1.45 feet at the north end. This strip separates the lot of Mrs. Reynolds, through its whole length of 415½ feet, from the newly-opened Elmwood avenue. The houses which stood upon those lots were high three-story and basement brick houses, expensively built, for the purpose of being used, as they were constructed, together.

In taking the land for the opening of Elmwood avenue, the commissioners awarded no compensation for the diminished value of Mrs. Reynolds' property, because, no part of her land being actually taken, an award to her, it was thought, was not authorized by the statute. In opening the avenue, the building that stood on the lot that belonged to Mr. Greene had to be taken down, and the materials removed. It was accordingly taken down, up to the westerly line of the avenue, leaving the side of Mrs. Reynolds' house with a ragged and unsightly surface, not easily susceptible of improvement, which undoubtedly greatly diminished the salability and value of the house, more particularly for the reasons stated in the papers, that the city was forbidden by the owner of the three feet of land from entering upon it, and Mrs. Reynolds was unable to get the consent of the owner to sell the strip of land for her benefit.

Obviously, if real justice were to be done by the city, Mrs. Reynolds ought to have been compensated in some manner for the damage done to her property by the opening of the public avenue. There is no moral reason why she should not be made good for any loss she has sustained for a public object; and, whatever objections of technical law may be raised in a court of law, there is no moral or legal argument that ought to prevent the legislature from providing for all that justice requires in

her case.   There is no doubt of the power of the legislature to require the city to do her justice, to make her just compensation, even if the city could successfully defend her claim in a court of law.   Town of Guilford v. Supervisors of Chenango, 18 Barb. 615, 13 N. Y. 143; Sinton v. Ashbury, 41 Cal. 530; Borough of Dunmore's Appeal, 52 Pa. St. 374; People v. Flagg, 46 N. Y. 401.   Where good conscience requires it the legislature may impose upon a municipality the duty of raising by taxation the money necessary to discharge a just and equitable obligation; and this can be done in cases where the courts could give no relief on account of being governed by fixed rules of law, and, perhaps, equally restricted and limited rules of equity.   In this case the question as to what justice requires with respect to Mrs. Reynolds' claim is one necessarily for the legislature or the common council.

In 1886, the common council, appreciating, as it would seem, the injustice likely to be done to Mrs. Reynolds, passed a resolution requesting the legislature to enact a law enabling the city to make just compensation to her for the damage done to her property.   The legislature, but not until its session in 1890, enacted a statute, which was approved by the governor May 21, 1890, authorizing the common council to ascertain, audit, and adjust the amount of damage occasioned to the real property of Mrs. Reynolds, and providing that the amount of damage should be appraised by three commissioners to be appointed by this court, and that the report of the commissioners should be approved by the court before being presented to the common council for audit, and that, "when the amount of said damage is appraised, the same shall be raised by assessment upon the property benefited by the opening of Elmwood avenue," and paid over to Mrs. Reynolds.   It is under this statute that the proceedings now sought by this motion to be stayed are taken. But it appears from the moving papers that while the bill for relief was pending before the legislature, as far back as 1887, a contract was entered into between said Amelia E. Reynolds and the city of Buffalo, by which the city sold and conveyed to her the portion of the building and other movable property upon the land which had belonged to Mr. Greene, and to which the city had acquired title by the proceedings to open Elmwood avenue, and by which contract, in consideration of such sale, she "relinquished and released" all claims against the city which she had or claimed to have and hold, or which might afterwards accrue to her, by reason of any damage resulting to her or her premises from the taking of the lands to open said avenue, and agreed to take down the building and remove the materials.

It is claimed in the papers presented on behalf of the city on this motion that the passage of the act for the relief of Mrs. Reynolds was obtained from the legislature by a certain imposition, consisting in the suppression or concealment of the fact that Mrs. Reynolds had, for a consideration, released all claims for damage to her property. ° The affidavits further state that at the time the city instituted these proceedings for the appraisement of the damages, and when the city attorney applied to the court for the appointment of the present commissioners, the common council and the law officers of the city were unaware of the

fact, or had overlooked the fact, that Mrs. Reynolds had entered into the said agreement before the passage of the act of the legislature, and that, as soon as the fact was discovered, the preparation of the papers for this motion was at once begun, for the purpose of obtaining a stay of the proceedings before the commissioners until the common council might take steps to obtain from the legislature a repeal of the statute. On the other side, in behalf of Mrs. Reynolds, the depositions state that no disguise or concealment was attempted towards the legislature or the common council; that notice of the pendency of a bill in the legislature for the relief of Mrs. Reynolds was published in the Buffalo Commercial, a newspaper published in the city of Buffalo; that the situation was perfectly understood by the late corporation counsel; and that the statute was enacted, and the proceedings were commenced, because the justice of compensating her for her damage was itself urging the procedure. It is also claimed by Mrs. Reynolds that, when she entered into the agreement with the city, it was represented to her by the corporation counsel that he could and would obtain a conveyance to her of the narrow strip of land adjacent to her premises, and that she entered into the agreement induced by such representations, and in belief that they were reliable, and not doubting that she could readily acquire the strip of land, with the possession of which she might have made the materials sold to her of some value, but that the owner of the strip of land absolutely refused to part with the title of it to her, and, consequently, that she has received no compensation, because the expense to her of taking down the building and removing the materials from the street was all the materials were worth. It is also urged by counsel for Mrs. Reynolds that the court has no power to arrest the execution of an act of the legislature, however unwise its provisions may be, or whatever the motives or inducements may have been which led to the enactment, citing the cases of People v. Draper, 15 N. Y. 545; People v. Shepard, 36 N. Y. 290; and other authorities.

It may be remarked at once that the validity of the considerations brought to bear upon the legislature to secure the passage of the act cannot be inquired into on this motion; if anything, only the right and justice of the objects for which the proceedings are instituted and conducted under the supervision of the court. If the only preliminary question was the validity of the release, and it was found to be binding, the court could safely refuse its sanction to the proceedings, notwithstanding the statute. But the presumption is that the legislature knew what it was about, and, as already observed, its powers are not limited to remedial acts in aid of legal claims. The representations made to the individual members of that assemblage cannot be inquired into. It may be that the experienced men who composed the legislature deemed it evident that the value of the materials above the expense sustained by Mrs. Reynolds in taking down the building was an insignificant compensation for the very substantial damage alleged to have been done to her property,—the same property upon which had been assessed a sum in the neighborhood of $3,000 for the public improvement which occasioned the damage.

This motion is for a stay until the common council and legislature can take action for the repeal of the statute under which the city is required to take these proceedings. The learned counsel for the city claims that it is patent that the legislature will repeal the act, on the ground that Mrs. Reynolds had legally released all claim for damages. The city's present law officers, learning from the late city attorney, Mr. Laughlin, that he, just before retiring from office, had discovered the existence of the contract between Mrs. Reynolds and the city, and that he had proposed to suspend the proceedings, deemed it also their duty to bring the matter to the attention of the court, and to ask a stay of the proceedings. I am disinclined to grant a stay, upon the proofs as they stand before me. On behalf of Mrs. Reynolds, it is stated that she signed the contract upon the assurance of the corporation counsel that the strip of land could be got for her, and that it was not doubted she could acquire the possession of the strip to enable her to restore her own house to a proper condition. It appears probable that she entered into the contract, induced by excusable misapprehension or mistake as to her ability to make the purchase of the Greene building available to her profit in connection with her house and lot. Her affidavits show that she had to take down the building purchased from the city, and remove the materials, on account of her inability to get possession of the strip of land adjacent to her house, and that the expense to her was equal to the value of the materials. The affidavits in her behalf tend strongly to establish the claim that the damage occasioned to her property by the opening of Elmwood avenue was very large, and that her loss was for the public benefit. If the facts are all as she affirms them to be in this connection, they present a case upon which the legislature, disregarding legal technicalities, might conscientiously and equitably require the city to make a fair and adequate compensation; for it is not the policy of the state to take or destroy private property for the public requirements without making compensation. If the facts are not as she asserts, opportunity will be found for the city to make the contrary to appear.

There are, it is true, some circumstances that make it appear probable that the legislature, in fact, misapprehended the situation. It appears that the resolution by which the city requested the legislature to pass an act for the relief of Mrs. Reynolds was adopted by the common council in August, 1886; that Mrs. Reynolds executed the instrument of release in July, 1887; that more than two years afterwards, in 1890, she or her agents obtained the city clerk's certificate of the adoption of said resolution, and used it with the members—or some of the members—of the legislature in securing the passage of the statute. These circumstances offer some grounds for supposing, as is now claimed by the city attorney, that the legislature was deceived into enacting the statute. If the certificate was obtained and used for the purpose of imposing on members of the legislature, the intention might, by rules of law, be imputed to her. But technicalities and legal imputations cannot bind the legislature. The question was whether her property was destroyed without compensation, and the passage of the act implies, in

a way the court cannot dispute, that the legislature looked into all the circumstances, and determined that she was entitled to compensation. On behalf of Mrs. Reynolds the depositions deny that any misrepresentations were made to the legislature, and state that the late corporation counsel was acquainted with all the circumstances of the case, from the beginning, and approved of the appointment of the commissioners of appraisal. Counsel for Mrs. Reynolds insists that the court has not the right to intervene, and stop the proceedings before the commissioners, which the statute requires the city to prosecute. But by the terms of the statute the proceedings taken before the commissioners are subject to the approval of the court, and it is laid down in Re City of Buffalo, 78 N. Y. 370, that "courts have always control over their own proceedings, and, where there is no express prohibition, may deal with them so that what is right and just may be reached." The affidavits and circumstances tend pretty strongly to convince me that Mrs. Reynolds has not received a just compensation for her injury. The letter of the statute is that the commissioners shall appraise the damage to her property, but the intent is that an award shall be made for the loss she has sustained on account of the damage to her property.

If she has received anything in satisfaction of her claim, it ought to be allowed. She says the materials, etc., upon the lot taken for the street, were of no value, beyond the expense of removal; but on that question the city has not had an opportunity to be heard. The statute is yet in force, and the legal presumption which binds the court is that it was enacted by the legislature intelligently. It seems to me, from all the knowledge furnished on this motion, that it is a just statute.

The order I propose will not interfere with the due operation of the statute. Whether the release Mrs. Reynolds executed ought to override her equities, and prevent confirmation of any report that may be made by the commissioners, and whether, on account of misapprehension or mistake, she ought to be exempted from the instrument of release executed by her, are questions which, from want of proper proofs, must be reserved until the coming in of the commissioners' report, or until, upon some subsequent hearing, the proofs can be fully gone into.

Let an order be entered granting a motion for a stay, unless Mrs. Reynolds consent to enter into a stipulation in writing herein that the commissioners in making their appraisal of her damages, shall ascertain and allow, in reduction of the award to her, the value, if any, of the property conveyed to her by the city, above the expense of taking down the building and removing the materials and property, and, if she so consent and stipulate, the motion is denied. The form of the order, if not agreed upon by counsel, to be settled by a judge of the court. Costs of the motion not allowed to either party.